390 So.2d 972 (1980)
In re HINTON, Applying for Adoption.
No. 14322.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1980.
*973 Richard R. Storms, Ruston, for appellant.
Truett West, Farmerville, for appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
HALL, Judge.
In this stepparent adoption proceeding, the stepfather appeals from a judgment of the district court, sitting as a juvenile court, denying his petition to adopt his wife's two children of her previous marriage to the children's father, who opposed the adoption. The court found that, although the father's consent to the adoption was not necessary because the father had failed to comply with a court order of support for one year, it was in the best interest of the children to maintain a relationship with their father as well as with their mother and stepfather.
The juvenile court relied heavily on the Third Circuit's decision in Adoption of Latiolais, 376 So.2d 555 (La.App. 3d Cir. 1979), which was later affirmed by the Supreme Court at 384 So.2d 377 (La.1980). In that case the Third Circuit and the Supreme Court reversed a judgment granting the adoption, holding that even though the father's consent is not required under LSA-R.S. 9:422.1 because of failure to comply with an order of support for one year, the *974 main consideration is the best interest of the child. The Supreme Court held in that case that it was not established that the adoption was in the best interest of the children and to the contrary, it was established that there was a continuing close relationship between the father and the child which should not be severed.
On appeal, the stepfather-appellant urges that the juvenile court erred because in this case, readily distinguishable from Latiolais, there is no relationship of love, affection and regard between the father and the children. The appellant points out that in addition to the failure to pay court-ordered child support of $100 per month for more than one year, the father was not seen, visited, or even talked on the telephone with the children for almost two years.
Finding no abuse of the juvenile court's great discretion in determining the best interest of the children, we affirm the judgment denying the adoption.
The children are a girl born February 2, 1969, and a boy born June 27, 1971. The marriage of their mother and father was dissolved by judgment of divorce on March 18, 1976. The divorce judgment granted custody of the two children to the mother and ordered the father to pay $100 per month for their support. On June 4, 1976 the mother and the petitioner for adoption were married and, since that time, the children have lived with their mother and stepfather in Ruston. The stepfather's petition for adoption was filed November 16, 1979.
The juvenile court found that the father had failed to comply with the court order of support for a period of one year and that his consent to the adoption was not required under LSA-R.S. 9:422.1. The evidence establishes that the father made a payment of $1,000 on October 26, 1978, covering the period from December 1977 through September 1978. He did not make any additional child support payments until November 30, 1979, after the adoption petition was filed, at which time he sent a postal money order for $300 with the notation that this sum was to cover child support payments for October, November, and December 1978.
The father testified that he was told by the mother that it would not be necessary for him to make child support payments and that she would prefer that he not do so. This was denied by the mother; however, she did testify that no requests, demands, or other efforts were made by her during the last year to get the father to make any child support payments. The trial court found that the evidence in the case leaves little doubt but that the stepfather and mother wanted the father of the children to be over a year delinquent in his support payments so that his consent to the adoption would not be necessary.
Having determined that the consent of the father to the adoption was not necessary, the juvenile court considered the best interest of the children and determined that their best interest would be served by maintaining a relationship with their father, as well as with their mother and stepfather.
The evidence relating to the father's relationship with his children discloses that prior to the parents' separation in 1974 the father was close to the children and, because he was self-employed and was at home most of the day, he spent more time with the children than did his wife, who was employed away from home. For about a year after the separation the father saw the children once or twice a month when he would pick them up and take them to his mother's home for the weekend. After 1975, when the mother started going with the petitioner whom she later married, the father's visits with his children decreased in number and were "scattered".
The father last saw the children in the early part of 1978. It is clear from the record that the mother was uncooperative and made it difficult and unpleasant for the father to visit with the children. Because the daughter had an ear disease the mother would not let the father take the children away from Ruston. During 1978 the father called several times to talk to the children on the telephone but was not allowed to do so. The mother denied that she always refused to let defendant talk to the children, *975 but admitted she did so on occasion because it upset them. Around Christmas 1978 defendant asked to take the children for a visit to his mother's home. The mother would not let the father take the children out of the city but she testified she was prepared to let him visit them in Ruston. The visit did not take place and the father has made no effort to visit with or contact the children since that time. At the time of trial in December 1979 the father had not seen or talked to the children in almost two years.
The father stated that the reason for the infrequency of his visits and attempts to visit his children was that the mother refused to let him see them and threatened to have him arrested if he tried to see them. The mother and stepfather denied that the defendant had been threatened with arrest or that he had been denied visitation rights. As a whole, the testimony indicates considerable conflict and animosity between the father and the mother that discouraged him from trying to see his children. The father considered but never took legal action to enforce his visitation rights. He testified he now wishes to comply with his support obligation and exercise his full visitation rights.
The juvenile court found that the evidence showed that the conduct and attitude of the father and mother of the children since their separation left much to be desired. It found the animosity of the parents toward each other is detrimental to the children. The court found that the father was wrong in failing to provide for the children and also that the mother must find enough love for the children to encourage a meaningful relationship with their father.
The evidence, including the confidential report submitted by the Department of Human Resources, establishes that the home and environment being provided by the stepfather and mother is exemplary in all respects. The petitioner testified that he has an excellent relationship with his stepchildren, loves them very much, and wants to adopt them. He provides for all their needs. Both children call him "daddy". The children's mother confirmed that they have a good relationship with their stepfather. The mother and stepfather were of the opinion the adoption would be in the best interest of the children and would provide a more stable and comfortable atmosphere for them.
Evaluating the best interest of the children, the juvenile court made the following remarks:
"The stepfather by being married to the mother of the child will have and does have, by virtue of his day to day relationship with the children, an opportunity to develop a relationship with the children that will endure for their lifetimes. The natural father, on the other hand, is not precluded from demonstrating to his children the love affection he has for them. The court is convinced that it is best in connection with the emotional maturing and development of the children for them to know that they are loved and cared for by their mother and stepfather and also by their natural father. The court cannot assure the parties to this litigation of the situation which will insure and guarantee that the children will become well adjusted adults. However, the court in consideration of the matter has carefully and painfully considered all the testimony, evidence and circumstances in the case and expresses the opinion that the best interest of the minors would be for them to have a very meaningful relationship with [their] mother, stepfather and natural father."
In Latiolais, supra, the Supreme Court held that LSA-R.S. 9:422.1 does not set the criteria to be used in determining whether or not an adoption shall be granted. It applies only to the narrow question of whether parental consent shall be required when a minor's adoption is sought. The court held that the best interest of the child is the major standard to which a court must look before it can determine when or whether to order an adoption. LSA-R.S. 9:432. In affirming the Court of Appeal's reversal of a judgment granting an adoption, the court held that no showing *976 was made by the petitioner that the minor's best interest would be served by permitting the adoption and that on the contrary the father had shown that he and his daughter had a very close and loving relationship which had been maintained over the years. The court reiterated that the petitioner failed to show how the adoption, which would rupture the relationship between the minor and her father, would be in the child's best interest.
In the Latiolais case, as revealed by the opinion of the Court of Appeal, although the father had failed to comply with a court order of support for more than a year he had nevertheless continued to visit with his child every other Sunday, taking the child to his mother's home in the country where they rode horseback and engaged in other activities. There was a relationship of mutual regard and affection.
Although the relationship of the father and child in the Latiolais case is readily distinguishable from the relationship of the father and children in the instant case, the same principles are applicable. It is the best interest of the children that determines whether or not the adoption should be granted. The seriousness and finality of the severing of the relationship between the parent and child is a factor to be considered. The importance and benefit to the child of a continued relationship with a parent is to be considered.
The fact that the father has forfeited his parental right to insist on continuation of his legal relationship with his children does not mean that the children should necessarily have their right to a relationship with the father legally terminated. Where the evidence indicates a real probability that the children can have and enjoy and benefit from a continuing relationship with their father, this is an appropriate factor to be considered in determining the best interest of the children.
Each case is to be determined on its own facts. The juvenile court should have great discretion in making this determination which will not be disturbed in the absence of a clear abuse of that discretion. Although one-year noncompliance with a support order has been established by the legislature as an arbitrary cutoff of the parental right to prevent an adoption, no such arbitrary standard has been legislatively established for determining when the adoption is in the best interest of the child or when the advantages of the adoption to the child outweigh the advantages to the child of a continued relationship with the child's parent.
Here, the juvenile court found it to be in the best interest of the children to maintain a meaningful relationship with the father, while at the same time continuing their loving relationship with their stepfather and mother. The trial judge apparently was convinced that the father continued to have an interest in the children and had not maintained close contact with them because of the friction which existed after the divorce. The court obviously believed this relationship could be reestablished and that it would not interfere with the attachment the children have also developed for their stepfather. There is no showing that the denial of the adoption will operate to the detriment of the children or change the excellent situation they are now enjoying in their stepfather's home through his affection, attention, and generosity.
The fact that the father here, although perhaps not entirely of his own fault, has not maintained the kind of close relationship found in the Latiolais case has caused us much concern in the determination of whether the juvenile court abused its discretion in this case. However, the juvenile court is in the better position to make the best interest determination. Where that court determines that it is in the best interest of children to maintain a relationship with the noncustodial parent and makes a reasonable determination that a meaningful, constructive relationship is probable, this court will not try to second-guess the juvenile court in such a sensitive balancing of interests.
*977 Appellant argues that the facts of this case are closer to the facts of DeRosier v. Dean, 378 So.2d 588 (La.App. 3d Cir. 1979), decided by another panel of the Third Circuit after the Court of Appeal decision but before the Supreme Court decision in Latiolais. The court affirmed a judgment granting an adoption where the child's father exercised visitation rights infrequently and saw the children but twice during the year preceding the adoption proceeding. The argument has merit; however, the facts of the DeRosier case are not stated in detail, each case must be decided on its own facts and circumstances, and DeRosier was an affirmance of the juvenile court's decision.
The judgment of the district court, sitting as a juvenile court, denying the adoption is affirmed. Costs of the appeal are assessed to the appellant.
Affirmed.