441 So.2d 478 (1983)
In re EWB Applying For Adoption.
No. 15830-CAJ.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*479 DeLaune & Blondeau by A.L. Blondeau, Bossier City, for appellee.
Love, Rigby, Dehan, Love & McDaniel by Joe B. Cordill, Jr., Shreveport, for appellant.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This is a stepparent adoption proceeding. The petitioner seeks to adopt his wife's daughter by a previous marriage. He alleges the consent of the child's father is unnecessary because of his failure to pay court ordered child support for over a year. The father opposes the adoption. After a hearing the trial judge found the father's consent unnecessary and the adoption was in the best interest of the child. He granted the adoption and ordered the child's name changed. The opponent appeals. We reverse for the reason that the adoption was not in the best interest of the child.
Opponent and the mother were granted a divorce in California in January, 1979. The divorce decree granted the mother custody of the child of the marriage, age 6 at the time of the adoption hearing, and ordered opponent to pay $225.00 per month child support. Opponent was granted reasonable visitation privileges. Prior to the divorce but after the couple separated, the mother and the child moved to Bossier City, where *480 the mother resided prior to her marriage. She married petitioner in January, 1979. Opponent remained in California. He remarried in March, 1980.
There was a great deal of animosity between the ex-spouses which led to friction over what was meant by reasonable visitation privileges. Opponent filed a rule in Caddo Parish to set specific visitation rights in March, 1979. The judgment on the rule gave opponent, among other visitation rights, the right to have physical custody of the child for two weeks each summer.
The judgment setting forth specific visitation rights did not terminate the friction over opponent's visitation rights and he began withholding various amounts from his child support payments. In March, 1980 opponent filed a rule in Caddo Parish for contempt against the mother for failure to comply with the visitation rights set forth in the judgment. She responded with a rule for contempt against opponent and a motion to make the unpaid child support executory. Judgment was rendered making past due child support of $1,031.00 executory. Opponent's specific visitation privileges were basically retained. Opponent never paid the back support but he began making his full monthly payments.
In early September, 1980 opponent contacted his ex-wife about having the child come to California for her two week summer visit for 1980. The mother refused to allow the visit because she considered the summer to be over and the child, who was 3 years old at the time, was in nursery school. The mother testified she considered nursery school to be more important than the child's visit to her father. In response to the mother's refusal to permit the visit, opponent stopped payment on his child support check for September and has not paid anything since.
Prior to the hearing opponent tendered government checks totaling $653.59 payable to his order to be applied to his unpaid child support into the registry of the court to be paid to the mother if the adoption was not granted. The trial judge refused to permit the conditional deposit of the checks in the registry of the court but permitted the checks to be placed into evidence. The opponent testified he intended to eventually pay the unpaid child support and to maintain same current in the future.
The testimony at the hearing indicates petitioner and the child have a good relationship and they love each other very much. Petitioner appears to be an ideal father figure. He has a good job, attends church regularly and is an excellent husband and father. He becomes involved in most of the child's activities and he spends as much time as possible with her. A child has been born of the marriage between petitioner and the mother and petitioner treats his child and the child he seeks to adopt in the same manner.
After the hearing the trial judge found that: (1) opponent's refusal to pay child support was unjustified; (2) opponent had forfeited the right for his consent to be required to the adoption under La.R.S. 9:422.1 because of his failure to pay child support for over one year; and (3) it would be in the best interest of the child to order the adoption.[1]
On appeal, opponent concedes his consent to the adoption is not required. He contends *481 the trial court's finding it was in the best interest of the child to order the adoption was incorrect.
Although a parent has lost the right for his consent to be required to the adoption of his child under R.S. 9:422.1, the adoption should only be granted when it is in the best interest of the child. La.R.S. 9:432 B; Adoption of Latiolais, 384 So.2d 377 (La.1980); In re BAS Applying for Adoption, 424 So.2d 405 (La.App.2d Cir. 1982).
Whether an adoption is in the best interest of the child must be decided on the facts of each case and the trial judge is vested with great discretion in making that determination. In re Hinton, 390 So.2d 972 (La.App.2d Cir.1980); In re BAS, supra. This discretion is not absolute and the trial judge's determination of best interest is subject to reversal if the record reveals manifest error in his determination. See Adoption of Latiolais, supra; In re Glass Applying for Adoption, 42A So.2d 383 (La. App.2d Cir.1982).
The trial judge's oral reasons for judgment dictated into the record include the following reasons on the issue of the best interest of the child:
I think its a large part of my judgment to take into consideration what [opponent] must have thought by his actions... The impression I get is that basically because of the dissatisfaction between the parents of [the child] he took it on himself to stop the child support payments... Basically what [opponent] seems to have done is, he apparently put his best interest and the interest of visitation, as he seems to think it should have been at a higher priority than the best interest of the child because he withheld the payments apparently in order to try to secure what he thought was best for himself and also for the visitation relationship.
.....
At any rate, I find here under all the circumstances with the good relationship that I have found in the [petitioner's] home and what with the decision that [opponent] made to stop the child support under the circumstances that he did, I have concluded that it's in the best interest of the child in these particular fact circumstances, which as we all know differ from any other case, you've got to take every case on its facts, but I found on these particular facts that it's in the best interest of the child to permit [petitioner] to adopt the child.[2]
While the natural parent's failure to pay child support and the relationship between the child and stepparent are certainly factors to be considered in determining the child's best interest, they are not the controlling factors. Where the trial judge erred is he considered the relationship between the child and opponent entirely from the standpoint of the legal effect of opponent's failure to pay child support and the fact that opponent did not consider the child's interest in not paying. No consideration was given to the relationship with her natural father from the child's standpoint and the effect it would have on her to declare that relationship at an end and deny her the right to see and be with her natural father and to deprive her of this extremely important relationship and all the benefits that come from it.
The leading supreme court decision in the area of stepparent adoptions under R.S. 9:422.1, where the noncustodial parent has failed to pay child support for over one year and has maintained a close relationship with the child, is Adoption of Latiolais, 384 So.2d 377. The facts of Latiolais, are similar to those in the case before us. The Latiolais facts are detailed in the court of appeal's decision at Adoption of Latiolais, 376 So.2d 555, (La.App. 3d Cir.1979). There the natural father was 31 months behind on his child support payments at the time the petition for adoption was filed. Nevertheless, *482 the father continued to make his biweekly visits. The father and the child "enjoyed a normal father-daughter relationship of love and affection." The stepfather also enjoyed a good relationship with the child and he provided her with a good loving home. The trial court granted the adoption. The court of appeal reversed stating, "we are reluctant to put an irrevocable end to the nine and one-half year relationship of father and daughter where that relationship has been maintained continuously and on a firm basis." The supreme court affirmed the reversal.
In the instant case opponent was approximately 25 child support payments behind at the time of the filing of the petition for adoption in May, 1982. Opponent continued to visit on a regular basis although he was behind in his child support.[3] The testimony indicates the child has good loving relationships with both opponent and petitioner and petitioner has provided her with a good home.
The trial court distinguished this case from Latiolais on the grounds that here the visits were not as frequent as those in Latiolais. The difference in the number of visits is explained by the fact that in Latiolais the father lived a relatively short distance from the daughter whereas here opponent has to travel all the way from California in order to visit. Opponent's visits are as frequent as possible considering the great distance involved.
Since the Latiolais decision was handed down we have considered the best interest of the child issue in R.S. 9:422.1 stepparent adoption proceedings on five occasions. All of the cases involved situations where the stepparent had a good relationship with the child and provided the child with a loving home.
Two of the cases involved similar factual situations to the one in the instant case. We refused to order the adoption in those cases. In re H Applying for Adoption, 437 So.2d 895 (La.App. 2d Cir.1983) (we affirmed the decision of the trial court); In re Glass Applying for Adoption, supra (we reversed the trial court). In both cases the noncustodial parents, who were behind in their child support payments, continued to visit their children and had good loving relationships with them.
In two of the cases we affirmed the trial court's decisions ordering the adoptions. In re MDA, 427 So.2d 1334 (La.App. 2d Cir. 1983); In re BAS applying for Adoption, supra. In those cases the natural fathers were not only behind in their support payments, they had also failed to visit or communicate with their children for extended periods of time.
In the fifth case, In re Hinton, supra, we affirmed a trial court's denial of the adoption because it was not in the best interest of the child. The father was behind in his child support for more than one year and he had not visited with or talked to his children for almost two years at the time of the hearing. The reason for the father's failure to visit was that all of his visitation attempts were opposed and frustrated by the mother. These factors were recognized in the opinion which followed the rationale of our other cases where the adoptions were denied because of the best interest of the child.
In all of these cases, including Latiolais, the controlling factor for determining the child's best interest is the quality of the relationship between the child and the noncustodial parent who has not paid child support and whether it would be conducive to the child's interest to maintain that relationship. Regular visitation, or attempted *483 regular visitation, tends to show the relationship is good.
In the instant case opponent has maintained a good relationship with his daughter through regular visitation although the number of visits has been limited to some extent by the distance involved. Opponent has bought the child many gifts and has always remembered her on her birthday, at Christmas and on other occasions by sending her gifts, cards and letters. He has called the child and has instructed her mother to allow her to call him whenever she feels the need to talk to him and she has called on several occasions. He has attempted to teach the child to swim and skate. Opponent loves his daughter and has three times filed proceedings in Louisiana courts, to enforce his visitation rights. He has made the necessary trips to Louisiana in connection with those proceedings.
The testimony indicates opponent's love for his daughter is reciprocated. She looks forward to his visits and is often disappointed when it is time for the visit to end. Even the maternal grandmother admits that every time she observed opponent and the child together they appeared to have a good relationship. There was no testimony to indicate the relationship was anything less than the normal loving relationship between father and daughter.
Under the circumstances it would be in the child's best interest to maintain her relationship with her father and not order the adoption. If the adoption were granted the relationship would irrevocably be at an end. We conclude the trial judge's determination that the adoption was in the best interest of the child was manifest error.
The child is entitled to the best of both worlds. She will be raised in a good loving home with a stepfather who cares for her very much. The stepfather will have the great majority of each year to raise her in the manner he and her mother see fit. At the same time the child will be able to occasionally see her natural father, enjoy the relationship she has with him, and receive the benefits which flow from her continued association with her natural father.
Our decision in this case should not be construed as condoning the nonpayment of child support. The support of his child is one of the strongest obligations the law imposes on a parent. Denial of visitation privileges does not justify the failure to pay child support. In re BAS Applying for Adoption, supra. Opponent has a legal remedy if his visitation rights are violated. By not paying his child support he has, in effect, taken the law into his own hands and such behavior is to be condemned. For purposes of our decision we consider opponent's consent to the adoption was not required because of his failure to pay court ordered child support for more than one year without justification. The reason we do not affirm the trial court's judgment granting the adoption is our concern for the best interest of the child. It was not shown that it would be conducive to that interest to sever her relationship with her natural father.
For the foregoing reasons, the judgment of the trial court granting the adoption and ordering the child's name to be changed is REVERSED and the petition for the adoption is denied. All cost in the trial court and on appeal are assessed against the petitioner.
NOTES
[1] La.R.S. 9:422.1 provides:

§ 422.1. Adoptions by stepparent, grandparent; consent:
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child then the consent of the other legitimate parent is not necessary when the spouse of the petitioner or the grandparent or grandparents or the mother or the father have been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent has refused or failed to comply with a court order of support for a period of one year.
(2) The other legitimate parent is a nonresident of this state and has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents.
(3) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child, without just cause, for a period of two years.
[2] In the interest of readability we have made several minor changes in what was actually transcribed by the court reporter. The substance of the court's reasons has not been changed. The names have been deleted to protect the confidentiality of the parties.
[3] The evidence reflects the following visits between the opponent and his child following the separation: Sept. 1978, four visits between October 1978 and March 1979 including a visit on Thanksgiving and Christmas of 1978; a visit in June, July and Thanksgiving 1979; a visit in January or February 1980, March 1980, June 1980, three visits between September 1980 and summer 1981, one of which was at Christmas 1980; Thanksgiving 1981, Christmas 1981, January, 1982.

Included in the visits that the mother refused to permit was a two week proposed visit in California Sept. 1980, a two week proposed visit in California June 1981 and a proposed visit in Bossier City in April, 1982.