HALL, Judge.
This appeal involves a stepparent adoption proceeding in which a father challenges the district court’s granting of the adoption of his nine-year-old son by the stepfather. Issues on appeal arise out of two findings of the court. The court found that the necessity of the father’s consent to the adoption was vitiated under LSA-R.S. 9:422.1 by his failure to comply with a court order of support for a period of one year. The court further found that the best interests of the child were served by granting the adoption. Based on our evaluation of the latter issue we reverse.

The Facts

The child’s parents were divorced on December 15, 1976. Custody was awarded to the father due to the mother’s lifestyle and conduct. The mother remarried in 1977 and the father voluntarily surrendered custody to her in 1979. On September 9, 1980, the mother obtained legal custody and the father was ordered to pay $100 per month in child support. At that time the father, as well as the mother, child, and stepfather, resided in the Monroe area. No support payments were made until October 28, 1981 — one month after the mother, child, and stepfather moved to Atlanta, Georgia in order for the mother and stepfather to attend the Salvation Army’s ministerial school. On that date the father sent the mother a check for $100 which she did not cash. On January 18, 1982, the stepfather petitioned to adopt the child. In June 1982, the family moved to Montgomery, Alabama where they resided at the time of the adoption hearing in November 1983. A formal judgment granting the adoption was signed on February 2, 1984.

Issue No. 1:

When the stepparent’s spouse is the legitimate parent of the child, and has custody of the child, LSA-R.S. 9:422.1 provides that the consent of the other legitimate parent is not needed for the stepparent to adopt, if the other legitimate parent has failed to comply with a court order of support for one year. Here the record shows that while appellant was ordered to pay $100 per month in child support on September 9, 1980, no payment was tendered until October 28, 1981. Although failure to support may be excused by just cause, see Adoption of Rapp, 348 So.2d 107 (La.App. 4th Cir.1977), appellant has the burden of proving just cause. Berry v. Berryhill, 330 So.2d 405 (La.App. 3d Cir.1976).
Appellant contends that the mother refused constant offers of monetary support during the one-year period, but told appellant he could buy clothes and other items and give them to the child. The mother denied this contention. The district court judge, although of the opinion that the *139 stepfather and mother planned and contrived the setting for the adoption, nevertheless found that the father failed to sustain his burden of proving the mother relieved him of his support obligation. The record indicates the trial judge’s findings are reasonable; these findings will not be disturbed by this court. Pierre v. Landry, 341 So.2d 891 (La.1977).
Appellant further contends that the clothing and other items given to the son should be considered in support of the son. However, the support obligation may only be met by making payments to the custodial parent. In re Jones, 337 So.2d 283 (La.App. 2d Cir.1976). As stated in Rodriguez v. Rodriguez, 245 So.2d 765, 769 (La.App. 4th Cir.1971):
“The court will not allow itself to be put into the position of an accountant, computing every donation made by the father to his son. His obligation is to support the minor child by making payments to the mother, and it is only by so complying that he may fulfill this obligation.”
Neither the appellant’s contention that his support obligation was relieved, nor his contention that his support obligation was otherwise fulfilled can be considered just cause for noneompliance with the support order.
Appellant submits that just cause should be found in the present case because of the factual similarities with In re Ragas, 393 So.2d 925 (La.App. 4th Cir.1981). In Ragas the father was found to have just cause for failure to support because of his physical condition and the mother’s refusal to communicate or accept his attempts to contribute small sums of money. The sums offered were small due to the father’s serious physical problems, including epilepsy, that precluded any lasting employment. In the present case appellant has also experienced physical problems that have affected his ability to earn a living. Appellant testified that he suffered a spinal injury in March 1981, and was unable to work since that time. He underwent two operations as a result of his injury—the first prior to the time of his son’s move to Atlanta. Further degeneration of his spine indicated the need for a third surgery, a spinal fusion, but arthritis made the benefits of such surgery doubtful. However, unlike the Ragas case, appellant’s testimony indicates no physical problems existed during the greater portion of the one-year period in question, and further indicates no inability to make payments during the remainder of the year. On the contrary, appellant testified he had offered payments but had been refused. While appellant’s injuries appear serious and explain his inability to work or travel out of state to see his son, they do not excuse his lack of support. Furthermore, the mother did not refuse to communicate with the father, and although she did refuse to cash the check of October 28, that check was not sent until after the one-year period had expired. Therefore, the pertinent facts of Ragas are clearly distinguishable from the present case.
We conclude that the trial judge was correct in finding appellant failed to comply with the child support order over a one-year period, that no just cause existed for this failure, and that appellant’s consent to the adoption was unnecessary.

Issue No. 2:

The Louisiana Supreme Court in Adoption of Latiolais, 384 So.2d 377 (La.1980), held that LSA-R.S. 9:422.1 applies only to the narrow question of parental consent to a minor’s adoption, and does not set the criteria for deciding whether an adoption should be granted. Instead, the best interest of the child is the major standard to which a court should look when determining whether to grant an adoption. In Latiolais, despite the father’s failure to pay court-ordered child support for a period in excess of one year, the application of the best interest of the child standard resulted in the denial of a stepparent adoption. This court also has found the best interest of the child sometimes better served by disallowing stepparent adoptions in cases where the father has failed to comply with his support obligation. In re Glass, Applying for Adoption, 424 So.2d 383 (La.App. *140 2d Cir.1982); In re Hinton, 390 So.2d 972 (La.App. 2d Cir.1980).
Although each adoption case must be determined on its own facts, both the Glass and Hinton cases, supra, provide guidance as to the proper factors to be considered, and the proper focus to be taken in determining the best interest of the child. In Hinton this court noted two interrelated factors to be considered in determining the best interest of the child — the seriousness and finality of the severing of the relationship between parent and child, and the importance and benefit to the child of a continued relationship with a parent. Similarly, in Glass a dual focus was found appropriate in determining the child’s best interest:
“It is not enough to examine the love and home environment provided by the petitioner/stepparent. It is necessary as well to examine the depth and closeness of the child’s ties with the noncustodial parent, and the effect which the loss which this relationship would have on the child.”
The importance of the natural bond between parent and child in a determination of the child’s best interest is apparent in both Glass and Hinton. Although a close relationship existed between the child and stepfather in those cases, adoption was not allowed when, as in Glass, a close relationship also existed between the child and the natural parent, or when, as in Hinton, a close relationship had existed, could be reestablished, and would not interfere with the relationship between the child and stepfather.
In the present case the district court judge determined the best interest of the child would be better served by granting the stepparent adoption. As noted in Hinton, the judge has great discretion in making this determination, and this court ordinarily will not try to second-guess such a sensitive balancing of interests. Nevertheless, when severing the natural bond between parent and child, the district court’s judgment must reflect a careful balancing of the importance of all interests, including the importance of the natural bond itself. “Ties between parent and child, being the closest and strongest within the human family, courts sever them with great reluctance.” Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966).
The district court judge noted that father and child maintained frequent contact and association when all parties resided in Monroe, but that the child’s attention to his father waned following the move to Atlanta when contact became less frequent. The judge felt the father could have maintained closer contact and visitation. However, nowhere in his reasons for judgment does the judge mention the father’s serious physical problems. As noted, appellant testified that after his injury in 1981, he was unable to travel to see his son, although he continued to' contact his son by phone. The combination of appellant’s spinal injury plus the son’s move out of state, both circumstances beyond the appellant’s control, go far in explaining the decline in the father/son relationship after 1981. Also pertinent are the judge’s findings that there were occasions when the mother did not notify the father of the child’s presence in this state when the family returned for visits, and that the adoption setting was contrived by the mother and stepfather who apparently needed the adoption to be confected to be promoted in the Salvation Army organization.
When determining the importance of the natural bond between parent and child in an evaluation of the child’s best interest, a weakening of that bond caused by circumstances largely beyond the control of the noncustodial parent, and caused at least in part by actions of the custodial parent, indicates that a greater importance should be placed on the nature and strength of the bond prior to its weakening. The trial judge in this case indicates that prior to the appellant’s injury and the child’s move out of state, father and son enjoyed frequent contact and association, but the judge makes no mention of the quality of that relationship. Aside from conflicting testimony of witnesses, the record indicates *141 that when father and son were together, they played ball, went to ballgames and on fishing trips, and visited with the paternal grandfather with whom the child had a good relationship. Notably, two years after the contacts between father and son were drastically reduced, the son testified that if the adoption were granted he would still love his father, but favored the adoption because of his embarrassment at having a last name different from his mother. This testimony of continuing love for the father indicates that the bond between parent and child prior to the child’s move out of state was significant.
Although the child also testified to a close relationship between child and stepfather, and to a desire for the stepfather to become the child’s new father, the child indicated that should his mother again remarry, he would desire to change his name again and have the new husband as his father. While a good relationship between child and stepparent is a factor to consider in determining the best interest of the child, this relationship in itself does not indicate the need to sever the natural parent/ child bond, especially absent a showing that the child’s relationship with the natural parent will interfere with the relationship of child and stepparent. Ordinarily, a child’s knowledge that he is loved and cared for by both his stepparent and the natural parent will not be in derogation of the child’s best interests. Here there is no showing that the relationship between appellant and his son would detrimentally affect the son’s relationship with his stepfather. Nor is there no hope that in the future father and son can establish a closer relationship, although at present this relationship apparently will depend to a great extent on telephone conversations, letters, and other forms of less personal communication and contact.
In a case where a significant father/son relationship once existed, where the relationship was weakened by circumstances largely beyond the control of the father and contributed to by the mother, and where there is no indication that a reestablishing of that relationship could not occur or would be detrimental to the stepfather/stepson relationship, we cannot agree that the child’s best interests are served by granting the adoption, and thus forever severing the natural bond between parent and child.

Decree

Accordingly, the judgment of the district court granting this stepparent adoption is reversed, and the petition for adoption is rejected. Costs are assessed to the petitioner.
Reversed and rendered.