635 So.2d 674 (1994)
In re: Todd FARRAR Applying for Intrafamily Adoption of Brian Robert McNeal, Plaintiff-Appellee.
No. 93-1347.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
Allan Dale Smith, Ball, for Todd Farrar.
Kathy Fontenot Deshotel, Ville Platte, for Robert G. McNeal.
Before YELVERTON, SAUNDERS and DECUIR, JJ.
SAUNDERS, Judge.
Defendant-appellant, Robert G. McNeal, appeals from the trial court's ruling granting the plaintiff-appellee's, Todd Farrar, petition for the adoption of his stepson, Brian Robert McNeal. The trial court ruled that the biological father's consent was not needed because of his inexcusable failure to pay child support for a period of one year and that the adoption was in the best interest of the child.
*675 For the reasons which follow, we reverse the trial court's judgment.

FACTS
Brian Robert McNeal (hereinafter BRIAN) was born on June 25, 1984, from the marriage of Robert Grimes McNeal (hereinafter ROBERT) and Johnette McNeal Farrar (hereinafter JOHNETTE). The biological parents of BRIAN experienced marital difficulties and received a judgment of separation on January 13, 1987, at which time ROBERT was ordered to pay one hundred seventy-five dollars ($175.00) per month in child support. BRIAN'S biological parents received a final divorce judgment on January 29, 1988. In the final divorce judgment, the court ordered joint custody of BRIAN to be shared by his natural parents, ROBERT and JOHNETTE. JOHNETTE was designated as domiciliary parent and ROBERT was given reasonable visitation rights.
Approximately one year after the divorce, JOHNETTE dated and then ultimately married the petitioner in this case, Todd L. Farrar (hereinafter TODD or stepfather). Since they were married, JOHNETTE and TODD, as stepfather, have raised BRIAN together.
ROBERT remarried and had two children with his second wife, SHEILA COCO McNEAL (hereinafter SHEILA). Their two children, the half-brother and half-sister of BRIAN, are named Zachary and Brooke McNeal.
From February 1992 until the filing of the stepfather's petition for adoption, ROBERT failed to comply with the trial court's child support order. On May 5, 1993, approximately one (1) year and three (3) months following the last child support payment made by ROBERT, the stepfather filed this petition for adoption. Shortly after learning that the stepfather was going to file the petition for adoption, ROBERT delivered to JOHNETTE a money order covering all arrears and payments of child support up to June of 1993. In addition, ROBERT gave notice to the trial court of his opposition to the adoption.
Pursuant to Louisiana Children's Code Articles 1193 and 1245, the stepfather alleged that the natural father's consent was not required because he refused or failed to comply with a court order of support for a period of one year. ROBERT contested the adoption and after a hearing on the matter, the trial court granted the stepfather's petition for adoption of BRIAN finding that the child's adoption by his stepfather was in the child's best interest.
The biological father, ROBERT, appeals the trial court's judgment granting the adoption of BRIAN by his stepfather.

I. Issues Presented
1) Whether the trial court erred when it failed to find that an agreement existed between SHEILA and JOHNETTE regarding the abatement of child support payments for the minor child, BRIAN. 2) Whether the trial court erred when it failed to find that ROBERT'S non-payment of child support was justified. 3) Whether the trial court erred when it found that the adoption of BRIAN by his stepfather was in the child's best interest.
This court pretermits the first two issues raised by appellant because we find that the adoption is not in the best interest of the child.

II. Law and Argument
Although a parent may lose the right for his consent to be required to the adoption of his child under LSA-Ch.C. articles 1193 and 1245(D)(1)[1] or (2), the adoption should only be granted when it is in the best interest of the child. See, Adoption of Latiolais, 384 So.2d 377 (La.1980). The party petitioning the court for adoption carries the burden of proving a parent's consent is not *676 required under the law and that the adoption is in the best interest of the child. In re JMP, 528 So.2d 1002 (La.1988); Wyatt v. Dept. of Public Welfare, 442 So.2d 1369 (La. App. 3d Cir.1983); In re H, 437 So.2d 895 (La.App. 2d Cir.1983).
"Whether an adoption is in the best interest of the child must be decided on the facts of each case and the trial judge is vested with great discretion in making that determination." In re EWB, 441 So.2d 478 (La.App. 2d Cir.1983); In re Hinton, 390 So.2d 972 (La. App. 2d Cir.1980), writ not considered, 396 So.2d 1350 (La.1981). "This discretion is not absolute and the trial judge's determination of best interest is subject to reversal if the record reveals manifest error in his determination." EWB, supra (citing Latiolais, 384 So.2d 377 and In re Glass Applying for Adoption, 424 So.2d 383 (La.App. 2d Cir. 1982)).
In reviewing the law in the area of adoption, we note that there is no clear definition or absolute outline of factors that should be used in determining what is in the best interest of a child. Louisiana courts have cited several factors including the ability of the stepparent to serve as parent, the ability of the stepparent to provide for the child's physical needs, the stepparent's ability to fulfill the psychological needs of the child, and lastly, whether the aforementioned considerations outweigh the existent natural parent-child relationship. In re Billeaud, 600 So.2d 863, 865 (La.App. 3d Cir.1992). More specifically, where a stepparent is married to the natural parent having custody and seeks to adopt that child, Louisiana courts have held:
"The most important factors are the child's relationship with h[is] stepfather and h[is] natural father. It is not enough to examine the love and home environment provided by the petitioner/stepparent. It is necessary as well to examine the depth of closeness of the child's ties with the non-custodial natural parent, and the effect which the loss of this relationship would have on the child. In Re JGG v. JLF, 556 So.2d 236 (La.App. 2d Cir.1990). The court must also consider the seriousness and finality of the severing of the relationship between the parent and child, as well as the importance and benefit to the child of a continued relationship with the parent. Id."

Knapp v. Adoption of Cotten, 577 So.2d 241, 246 (La.App. 1st Cir.), writ denied, 580 So.2d 364 (La.1991). Consequently, a court, for example, cannot automatically grant a stepparent's petition for adoption even where the relationship between a stepfather and his stepson is closer and more affectionate than the relationship between the son and his natural father. The law requires that the court also evaluate the relationship between the child and the natural parent and the effect on the child of severing the natural parent-child relationship.
This court has previously addressed the importance of the natural parent-child relationship. In Latiolais, which was affirmed by the Louisiana Supreme Court, we pointed out that an adoption terminates any right of visitation between the child subject to the adoption and the non-custodial natural parent. Adoption of Latiolais, 376 So.2d 555, 560 (La.App. 3d Cir.), affirmed 384 So.2d 377 (La.1980). In reviewing a stepparent's petition for adoption and the effect on the natural parent-child relationship, this court held: "[Granting the petition for adoption] would be tantamount to a pronouncement of death between them." Latiolais, supra. This death in the natural parent-child relationship would extend to the entire family of the natural parent. Latiolais, supra. In an adoption, a child's family name changes and he becomes a new legal person with no legal ties to his natural family. In the Louisiana Supreme Court's opinion affirming our decision in Latiolais, the court referred to the issue of the rupture of the natural parent-child relationship as a crucial factor in determining the best interest of the child. Adoption of Latiolais, 384 So.2d 377, 378 (La. 1980).
In another Louisiana Supreme Court case, the court again addressed the importance of the biological relationship. Although this case involved a private adoption[2], its discussion *677 of general policy considerations is relevant and helpful in determining the appropriate weight to give to the natural parent-child relationship.
"Under broadly shared social values the general rule is that the responsibility and opportunity of custody is assigned to a child's natural parents. The high value placed on family autonomy reflects a consensus that the natural parent-child relationship should be disturbed only if necessary to protect the child from physical or psychological harm. Moreover, preservation of the child's sense of lineage and access to his extended biological family can be important psychologically, as evidenced by the felt need of some adoptive children to search out their natural parents."
J.M.P., 528 So.2d at 1015.
"Louisiana courts have historically been reluctant to sever the parent-child relationship and derogate from the natural rights inherent therein since the jurisprudence recognizes the fundamental belief that a child has a right to know and love his parents and such rights should not be denied except when the parent has proven himself unworthy of this love." Billeaud, 600 So.2d at 866 (citations omitted); see also, Hinton, 390 So.2d 972 (holding petitioner must show that the denial of a petition for adoption, which would rupture the natural parent-child relationship, would operate to the detriment of the child). In cases similar to the one before this court, i.e. 1) where a stepparent is married to the natural parent having custody, 2) a stepparent's relationship with stepchild is excellent, and 3) a stepparent seeks to adopt that child, Louisiana courts have adhered to the presumption that maintaining the natural parent-child relationship is in the best interest of the child unless petitioner shows otherwise.
In order to rebut the presumption that it is in the best interest of the child to keep open or continue the natural parent-child relationship, Louisiana courts have required that the petitioner establish one of the following: 1) no natural parent-child relationship exists, 2) the natural parent is indifferent about the child's well being, or 3) the natural parent's visits with the child have been sporadic and inconsistent. Under those circumstances, the courts have believed that continuing the legal bond between a natural parent who has had inexcusable and lengthy lapses communicating and showing love for his child is not in the best interest of the child. Billeaud, 600 So.2d 863 (affirming a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that the natural father made virtually no contact with his son during a year long period, but made requisite efforts to successfully visit with another son); In re Kirby, 517 So.2d 981 (La. App. 3d Cir.), writ denied, 519 So.2d 107 (La.1987) (affirming a trial court's granting of stepfather's petition for adoption of his stepson when the record established that the boy had never seen his natural father and did not know what he would look like and where the natural father made no meaningful effort to visit or communicate with him for over eleven (11) years); Adoption of Dore, 469 So.2d 491 (La.App. 3d Cir.1985) (affirming a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that the boy had absolutely no relationship with natural father); In re Adoption of Broussard, 469 So.2d 454 (La.App. 3d Cir.), writ denied, 474 So.2d 1303 (La.1985) (affirming a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that the natural father had no meaningful relationship or close ties with his son, and where, for a period of approximately four years prior to his imprisonment, natural father seldom visited his son and contributed nothing to his support); Wyatt, 442 So.2d 1369 (reversing a trial court's denial of stepfather's petition for adoption of his stepdaughter when the record showed that the child's best interest were outweighed by any advantage to the child of a re-established natural parent-child relationship *678 after a six (6) year hiatus); In re MDA, 427 So.2d 1334 (La.App. 2d Cir.1983) (affirming a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that natural father displayed total disinterest in the child as revealed by his failure to support, communicate with or see his child); In re BAS, 424 So.2d 405 (La.App. 2d Cir.1982) (affirming a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that natural father had not seen and had failed to give child Christmas or birthday gifts since 1977 (date of divorce of natural parents)). In addition, while not relevant to the facts in this case, Louisiana courts have quite naturally severed the natural parent-child relationship when the relationship would pose a threat of physical harm to the child.
On the other hand, Louisiana courts have held in every case where the natural parent-child relationship has been continuous and on a firm basis, that it is in the best interest of the child that the natural parent-child relationship be maintained and the petition for adoption not be granted. See Latiolais, 376 So.2d 555 (reversing a trial court's granting of stepfather's petition for adoption of his stepdaughter when the record showed that the natural parent-child relationship had maintained a nine and one-half year relationship continuously and on a firm basis notwithstanding the court's recognition that the stepfather's relationship with the child may grow stronger in love and affection than with her natural father); EWB, 441 So.2d 478 (reversing a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that natural father maintained a good relationship with daughter through regular visitation); In re H, 437 So.2d 895 (affirming a trial court's denial of stepmother's petition for adoption of her stepchildren when the record showed that the natural mother maintained a frequent visitation schedule with her children including extended stays in the summer, purchased clothes and toys for them and despite serious health problems that prevented her from keeping up the regular visits, she made frequent contact with her children by long distance telephone calls); Glass, 424 So.2d 383 (reversing a trial court's granting of stepfather's petition for adoption of his stepson when the record showed that natural father maintained a "very close and loving relationship with his children" and where his children had "reciprocal love" with natural father's new wife and their children).
Citing as reasons for severing the natural parent-child relationship, the trial court in this case held that visitations between BRIAN and ROBERT were infrequent and that ROBERT had shown "very little interest in his son." The uncontroverted evidence of the record reveals, however, that visitations between BRIAN and ROBERT have been continuous and on a firm basis since the natural parents divorced. Indeed, the evidence establishes that since the judgment of separation on January 13, 1987, and the subsequent divorce on January 29, 1988, ROBERT never missed a regularly scheduled visit with his child, said visits occurring approximately every other week for over seven (7) years.
We are mindful that BRIAN'S relationship with TODD may be stronger in love and affection than it is with his own natural father. BRIAN, himself, expressed his desire to be adopted by TODD. There is no basis, however, in the trial court's finding that ROBERT was disinterested in his child's well being or unworthy of the child's love. For all but one of seven (7) years, due to financial problems associated with his farming operation, ROBERT made his child support payments. Although he failed to comply with the court order of support, he nevertheless continued to visit and maintain his relationship with BRIAN.
While the testimony from both sides establishes that BRIAN has a stronger attachment to his stepfather, both sides also concede that BRIAN and ROBERT have had an ongoing seven (7) year relationship of nothing less than mutual regard and affection. From the testimony of both sides, we know that during those seven years, ROBERT, his wife, and their extended family cared for and involved BRIAN in their family. Together they attended church, celebrated birthdays, and ate Sunday meals. ROBERT and *679 SHEILA bought him clothes, toys, and even sent him to summer camp. ROBERT brought him to work on occasion and allowed him to ride on farm equipment. During his regularly scheduled visits BRIAN developed a warm and loving relationship with ROBERT'S wife, SHEILA, and his half-brother, Zachary, and half-sister, Brooke, and ROBERT'S mother.
BRIAN is in a position to enjoy the best of both worlds, two loving parents, two loving stepparents, and two loving extended families. He should not be deprived of the love and support of either family.
"Th[is] child is entitled to the best of both worlds. [He] will be raised in a good loving home with a stepfather who cares for [him] very much. The stepfather will have the great majority of time each year to raise [him] in the manner he and his mother see fit. At the same time the child will be able to [occasionally] see his natural father, enjoy the relationship he has with him, and receive the benefits which flow from [his] continued association with his natural father [and extended family]."
EWB, 441 So.2d at 483. As pointed out in a similar case, Adoption of Latiolais, 376 So.2d at 560, in a few years, BRIAN may make his own choice and ultimately consent to his own adoption. In the meanwhile, the natural parent-child relationship should remain open.
The courts have consistently held a continuous and firm relationship between the natural parent and his child is in the best interest of the child and should not be severed unless, e.g. petitioner shows that denying the petition for adoption would cause emotional or psychological harm to the child or for some other reason would not be in the best interest of the child. The record contains no evidence which relates to this crucial factor and which could be the basis for granting the adoption. Because the natural parent-child relationship between BRIAN and ROBERT has been continuous and firm, and petitioner presents no evidence that maintenance of that relationship would be harmful in some way to BRIAN or to the excellent situation he now enjoys with his mother and stepfather, we hold that the natural parent-child relationship should not be severed.
We find that the trial court's decision is contrary to all current Louisiana jurisprudence, and therefore, the trial court is clearly wrong in its decision that the adoption is in the best interest of BRIAN.

Conclusion
For the foregoing reasons, the trial court's judgment granting the petition for intrafamily adoption is reversed. All costs at trial level and on appeal to be paid by TODD FARRAR, plaintiff-appellee.
REVERSED.
NOTES
[1] Generally, a parent's consent is required before his or her child may be adopted by another party. LSA Ch.C. art. 1193. Pursuant to LSA Ch.C. article 1245, "[t]he consent of a parent ... may be dispensed with upon proof of the required elements of ... paragraph D." Paragraph "D" of that article reads: "When a parent lawfully exercising actual custody of the child is married to a stepparent petitioner and ... the following condition[s] exist[s]: (1) The other parent has refused or failed to comply with a court order of support for a period of one year."
[2] Note the difference between a private adoption and a intrafamily adoption. "A single person, eighteen years or older, or a married couple jointly may petition to privately adopt a child." LSA-Ch.C. art. 1221. Generally, in a private adoption the petitioner(s) are unrelated or strangers to the child subject to the adoption. An intrafamily adoption involves a stepparent married to the parent of the child or a single grandparent or married grandparents of a child when the child has been in the grandparent's home for six months prior to the filing of a petition for adoption. LSA-Ch.C. art. 1243.