732 So.2d 632 (1999)
In re LEITCH Applying for Intrafamily Adoption.
No. 32,021-JAC
Court of Appeal of Louisiana, Second Circuit.
March 31, 1999.
*633 William G. Nader, Shreveport, Counsel for Appellant.
Charles A. Smith, Minden, Counsel for Appellee.
Before NORRIS, GASKINS, CARAWAY, PEATROSS and KOSTELKA, JJ.
NORRIS, Chief Judge.
The juvenile court granted the adoption of two minor children, VAL, Jr. and AML, to their stepmother, CML. TLQ, the children's natural mother, appeals the judge's determination that the stepparent adoption is in the children's best interest. We reverse and remand.

*634 Facts

VAL and TLQ were married on October 22, 1989, and together had two children, VAL, Jr., born 11/5/89, and AML, born 7/16/91. VAL and TLQ subsequently divorced and pursuant to a consent decree on May 28, 1992, they were granted joint custody of the children with VAL as the domiciliary parent. In July 1994, VAL filed a Rule to Change Custody and Child Support; in September 1994, an interim order was rendered which maintained the joint custody arrangement, with VAL still the domiciliary parent and ordered TLQ to pay child support of $25.00 per week. The court also directed the parties to hold another hearing in 60-90 days, but VAL did not attempt to have the hearing set. Instead, in April 1996, he filed a rule to obtain sole custody. On May 30, 1996, the court granted this rule, gave VAL sole custody of the children, and awarded TLQ restricted and limited visitation; the judgment was silent as to child support. TLQ was not present at the hearing, but was represented by a curator ad hoc.
VAL married CML on May 29, 1994. The two children, along with CML's children, have lived with the couple since they married. According to VAL's and CML's testimony, CML takes care of the children's needs on a daily basis. CML testified that she wants to adopt the children because she has been the one raising them and if something happens to VAL she has no legal right to them.
After divorcing VAL, TLQ, a resident of Texas, remarried, divorced her second husband in January 1997, and within the month married her current husband. According to TLQ's own testimony, she stopped paying child support in October 1995 because VAL and CML were denying her access to the children and she had discovered that VAL's brother-in-law had been accused of molesting AML.[1] TLQ also testified that she has a full-time job, and is paying her attorney and paying back a loan. TLQ further testified that VAL and CML would not allow her to visit the children and would not allow the extended maternal family to give her the children's unlisted phone number so that she could call them. TLQ testified that she has sent gifts to the children through her grandmother, mother, sister, and the babysitter. Notably, TLQ's elderly grandmother could not recall receiving gifts but testified that gifts had been sent to the children's babysitter, TLQ's mother has not seen the children since November of 1995, and TLQ's sister testified that she has picked up gifts from Austin, Texas and delivered them to the babysitter. The babysitter did not testify, but CML confirmed that she received a box of toys from the babysitter for the children, but thought the toys were from TLQ's sister. TLQ even brought to court a bag of gifts, videos of her and the children, and poems which she had written for the children, all of which she had been collecting for the children. TLQ stated that she had not mailed anything to the children because she was afraid the things would get lost in the mail, or CML would not give the letters and items to the children.
TLQ testified that she was not aware that VAL had filed for sole custody of the children. She did admit to finding out about the judgment the day it was rendered and stated that she tried unsuccessfully to contact Legal Aid. TLQ stated that she has not seen the children since May 30, 1996, when she saw AML at the babysitter's and talked to VAL, Jr. over the phone. Before that date, TLQ had not seen the children since November of 1995, when she saw them at her mother's house for VAL, Jr.'s birthday.
CML and VAL testified that they were amenable to allowing some members of TLQ's family to continue having access to the children, but not TLQ. TLQ's sister *635 and grandmother testified that they see the children on a somewhat regular, though limited basis. TLQ's sister stated that she and TLQ's grandmother are invited to CML's and VAL's home for birthday parties, and other gatherings. TLQ's mother has not seen the children since November 1995, but testified that she has not requested visitation. She attributes this to the fact that she works on weekends and CML will not let her see the children during the week. She further testified that CML and VAL conditioned visits on her not talking about TLQ to the children, a request which she would refuse to honor. TLQ's grandmother testified that she had the same condition placed on her visits.
The trial court found that TLQ's consent in the adoption was not necessary because she was a non-resident who failed to support the children for a period of one year. The court granted the adoption, finding that it was in the best interest of the children. TLQ has appealed that decision.

Applicable Law
Unless rights have been terminated, the mother and the father must consent to the adoption of a child. La. Ch.C. art. 1193.[2] This consent may be dispensed with when a parent is married to a stepparent petitioner and the following two conditions are met: (1) the parent married to the stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction, and (2) the noncustodial parent is a nonresident of this state and has failed to support the child for a period of one year after the judgment awarding custody. La. Ch.C. art. 1245.[3]
Even though a parent may have lost her right for consent to be required for the adoption, the adoption should only be granted if it is in the best interest of the child; the best interest of the children is the paramount consideration. La. Ch. C. art. 1255; Adoption of Latiolais, 384 So.2d 377 (La.1980); In re Glass Applying for Adoption, 424 So.2d 383 (La.App. 2d Cir.1982); In re Bas Applying for Adoption, 424 So.2d 405 (La.App. 2d Cir.1982); In re MDA, 427 So.2d 1334 (La.App. 2d Cir.1983); In re EWB, 441 So.2d 478 (La. App. 2d Cir.1983); In re D.W.H., 457 So.2d 137 (La.App. 2d Cir.1984); JGG v. JLF, 556 So.2d 236 (La.App. 2d Cir.1990); In re Farrar, 93-1347 (La.App. 3d Cir.4/6/94), 635 So.2d 674. In determining the best interest, the court needs to take into consideration that the legal consequences of adoption are abrupt, severe, and irrevocable: the relationship between the child and natural parent is severed. In re Glass Applying for Adoption, supra; In re D.W.H., supra; JGG v. JLF, supra. In making the determination, it is not enough to look at the love and home environment provided by the stepparent. Id.; In re EWB, supra. The court should also consider the depth and closeness of the child's ties with the non-custodial, natural parent and the effect the loss of this relationship would have on the child. Id. Children have a right to know and love their parents, and should not be denied this right except when the parent has proven himself unworthy of their love. In re Glass Applying for Adoption, supra. While the natural parent's failure to support the child is a factor to be considered, it is not a controlling factor. Id; In re EWB, supra.
Generally, the adoptive parents bear the burden of proving that the adoption is in the best interest of the child. Knapp v. Adoption of Cotten, 577 So.2d 241 (La.App. 1st Cir.), writ denied 580 So.2d 364 (1991); In re Farrar, supra. However, when the petitioning stepparent *636 is married to the child's parent and the court has granted that parent sole custody of the child, there is a rebuttable presumption that the adoption is in the best interest of the child. La. Ch. C. art. 1255; In re C.B., Applying for Adoption, 94-0755 (La.10/17/94), 643 So.2d 1251.[4] This presumption merely provides the fact-finder with a conclusion in the absence of proof to the contrary. Turner v. Turner, 455 So.2d 1374 (La.1984). Presumptions are indulged to supply the place of facts; they are never allowed against ascertained and established facts. Id. When facts are presented into evidence, presumptions disappear. Id.
The trial judge is vested with great discretion in determining whether or not to grant the adoption. In re Bas Applying for Adoption, supra; In re MDA, supra; In re EWB, supra; In re D.W.H., supra; JGG v. JLF, supra. This discretion is not absolute and the decision is subject to reversal if the record reveals manifest error. In re EWB, supra; JGG v. JLF, supra. Furthermore, when severing the natural bond between the parent and the child, the court's judgment must reflect a careful balancing of the importance of all interests, including the importance of the bond between the natural parent and the child. In re D.W.H., supra.
Notably, when the children are adopted by their stepparent, the non-custodial natural parent's rights and responsibilities are terminated. La. Ch.C. art. 1256. In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Court held that constitutional due process requires application of at least a clear and convincing evidence standard before the fundamental rights of a parent can be extinguished. See also, State in the Interest of A.C., 93-1125 (La.10/17/94), 643 So.2d 743 (on rehearing). Additionally, for the state or a private individual to terminate parental rights, they must establish each element of a ground for termination by clear and convincing evidence. La. Ch.C. art. 1035; In the Interest of J.L.N., 27,568 (La.App.2d Cir.6/21/95), 658 So.2d 272; State in the Interest of S.C. v. D.N.C., 26,104 (La.App.2d Cir.6/22/94), 639 So.2d 426, writ denied 94-1977 (La.1/4/94), 644 So.2d 1061.

Analysis
In its reasons for ruling in favor of the adoption, the trial court stated that TLQ's consent was not necessary and the adoption was in the best interest of the children. TLQ concedes that her consent is not necessary, but argues that it is not in the best interest of the children for them to be adopted by their stepmother.
The record shows that until October 1995, TLQ regularly paid child support, at which time she ceased paying support because, according to her, CML and VAL denied her access to the children.[5] TLQ also visited the children until May 1996.[6] TLQ, her mother, her grand-mother, *637 and her sister all testified that TLQ has regularly bought gifts for the children. TLQ's mother testified that she has gifts at her house purchased for the children from TLQ. TLQ's sister stated that she has picked up a number of gifts from TLQ and delivered them to the babysitter. CML confirmed that she received a bag of gifts for the children. Additionally, TLQ brought a box of toys which she had been collecting for the children to court. TLQ also brought in a collection of poems which she had written for the children and videos of her and the children, and testified that she thought she would see them at court and planned on giving them the gifts the day of the trial.
TLQ's grandmother testified that the children love their mother. TLQ testified that the children are her life and she greatly desires to strengthen her relationship with them and wishes to be allowed to visit them on a regular basis. TLQ's mother's and sister's testimony support the contention that TLQ loves her children and cares about their welfare. TLQ presented evidence that she has a bond with her children and a desire to maintain a relationship with them. She presented facts contrary to the presumption that the adoption was in the best interest of the children, consequently the presumption disappeared. Turner v. Turner, supra.
Though CML and VAL both testified that CML provides for the children's needs on a daily basis and loves them and they in turn love her, they did not rebut the testimony that the children also love and desire a continued relationship with their mother. CML testified that the children have been in therapy for three years, but no explanation was offered as to why they were in therapy nor did the therapist testify. In sum, CML and VAL did not present any information to contradict the claim of a bond existing between the children and their mother. Furthermore, they did not present any evidence that a relationship between TLQ and the children would interfere with the relationship between CML and the children, or that the loss of the relationship between the children and their natural mother would not harm the children.
Based on the record, TLQ overcame the rebuttable presumption in favor of the adoption. In turn, VAL and CML offered no evidence to show that the adoption, with the prerequisite termination of TLQ's parental rights, was in the best interest of the children. Notably, we find that the best interest of the children, the paramount consideration in an adoption, was not adequately taken into consideration. Therefore we reverse the trial court's grant of the adoption of the children by their stepmother and remand the case for evidence pertaining to the best interest of the children.

Conclusion
For the reasons expressed, we reverse the judgment of adoption and remand the case for further evidence. Costs to be divided between the parties.
REVERSED AND REMANDED.
CARAWAY, J., dissents.
KOSTELKA, J., dissents with reasons.
KOSTELKA, J., dissenting.
The majority opinion correctly recognizes that the trial judge has great discretion in determining whether or not to grant the adoption, that there is a rebuttable presumption here that the adoption is in the best interest of the children, and that consent of the biological mother is not necessary for adoption. Nevertheless, the majority reverses the judgment of adoption and remands. The trial judge gave reasons for his decision to allow the adoption, found the biological mother had not seen or supported the children for over a year and a half, and had shown both a lack of concern and a pattern of disregard for *638 the welfare of the children. Notably, the family has continued to live in the same residence where the biological mother last lived with the children so that the mother knew at all times where she could have contacted them. The majority opinion accepts the self-serving testimony of the biological mother and her kin as outweighing the findings of fact by the trial judge and the presumption in favor of the adoption. The trial judge: can best evaluate not only the credibility but also the sincerity of witnesses.
The majority now remands the matter to the trial judge who has already reached a reasonable conclusion. This appears to be an unwarranted substitution of opinion for that of the trial judge and the reopening of a matter that was decided over a year ago-such cannot be in the best interest of the children.
NOTES
[1] The children were staying with the brother-in-law and the incident was reported to child protection, at which time VAL got the children back and has since not allowed his brother-in-law access to them.
[2] VAL gave his consent to the adoption.
[3] TLQ testified that she currently lives in Austin, Texas and admitted that she has not paid child support since October 1995. Additionally, VAL had sole custody pursuant to a judgment. In sum, TLQ's consent is not necessary for the adoption of the children, a conclusion which she does not contest. Instead, she argues that the adoption is not in the best interest of the children.
[4] We are most hesitant in this case to rely solely on a rebuttable presumption to prove the best interest of the children since the record reveals that TLQ was not notified of the sole custody hearing and thus the judgment was more in the nature of a default judgment and not a considered decree. Barnes v. Cason, 25,808 (La.App.2d Cir.5/4/94), 637 So.2d 607, writ denied 94-1325 (La.9/2/94), 643 So.2d 149; Evans v. Terrell, 27,615 (La.App.2d Cir.12/6/95), 665 So.2d 648, writ denied 96-0387 (La.5/3/96), 672 So.2d 695; Tennessee v. Campbell, 28,823 (La.App.2d Cir.10/30/96), 682 So.2d 1274. We are troubled with affording any presumption as to best interest of the children when custody of the children has been previously determined on less than a considered decree.
[5] Notably, this does not justify non-support of the children by TLQ.
[6] The record shows that VAL and CML have not allowed her phone access to the children. Additionally, TLQ's mother and grandmother testified that CML and VAL forbid them from talking to the children about their mother, an assertion which CML and VAL confirmed. In a letter to TLQ's grandmother from CML and VAL, not only do they forbid her from talking about TLQ, they write that if she is unable to abide by this term she will not be allowed to see the children again. VAL testified that he instructed TLQ's family not to discuss her with the children because it made things hard on CML.