289 So.2d 304 (1973)
Ruth Ann Timmons LANGE
v.
Percy P. COLE et ux.
In re Percy P. COLE et ux., Applying for Adoption of Phyllis Ann Timmons.
Nos. 9626, 9627.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
*305 Gordie R. White, New Iberia, for appellant.
M. J. McNulty, Jr., Franklin, for appellee.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
CRAIN, Judge.
The matter before us involves an adoption and a related habeas corpus proceeding which were consolidated for trial. The trial court rendered a final decree of adoption which forms the subject of this appeal.
On May 18, 1971, Phyllis Ann Timmons was born to her mother, Ruth Ann Timmons Lange. At the time, Mrs. Lange had been divorced from George A. Lange for some fourteen months. On the birth certificate, the child's father was listed as unknown.
On November 19, 1971, Mrs. Lange, upon hearing of the death of her father in Oklahoma City, Oklahoma, surrendered physical custody of the child to God-parents, Mr. and Mrs. Percy P. Cole in Balwin, Louisiana, and left for Oklahoma. After several telephone calls between the Coles and Mrs. Lange in Oklahoma, where adoption of the child by the Coles was discussed Mrs. Lange returned to Bunkie, Louisiana, where she was employed, and on November 30, 1971, executed a notarial act consenting to the adoption of the child by the Coles.
On December 3, 1971, the Coles petitioned the court for an interlocutory decree of adoption. The court assigned February 7, 1972 as the date for the hearing on the petition. Service of the adoption suit together with the order assigning the hearing was served on both Mrs. Lange and George Lange, who was mistakenly listed as the father of the child on the assumption that the birth had occurred within the period between divorce and birth making the divorced husband the presumptive father of the child.
During the interval between the execution of the consent to adoption on November 30, 1971, service of the petition for adoption on her on December 13, 1971, and the hearing date of February 7, 1972, Mrs. Lange resided successively in Oklahoma, Alexandria, Louisiana, and finally in Shreveport. Sometime during this interval she apparently changed her mind regarding the adoption and counsel retained by her in Shreveport notified the court of the withdrawal of her consent. This notification came the day after the interlocutory decree was rendered in chambers on February 7. Nothing further transpired until November 17, 1972 when appellant filed a habeas corpus proceeding to obtain the custody of her child, putting in contest the final decree of adoption. On November 20, 1972, Mr. and Mrs. Cole filed petition for final adoption.
Appellant first contends that the interlocutory decree rendered on February 7, 1972 was invalid and that for this reason the withdrawal of her consent after signing of the decree is effective to prevent the adoption. LSA Revised Statute 9:429 provides in pertinent part that,
*306 "... the withdrawal of consent by the legitimate parent or parents, by the mother or by the father who has acknowledged the child by notarial act as provided by Article 203 of the Civil Code, shall not bar a final decree of adoption."
If the withdrawal of consent came after a valid interlocutory decree, the final adoption can be opposed only on showing that the adoptive parents are unfit, or that the adoption in other ways would not be to the best interest of the child. Adoption of Giambrone, 262 So.2d 566 (La.App.1972).
The appellants attack the interlocutory decree first on the basis that the father of the child as listed in the petition for adoption did not consent to the adoption. The evidence reveals that George Lange was not presumed to be the father of the child, and according to the testimony was not, in fact, the father. Under these circumstances, the mere fact that he was mistakenly alleged to be the father in the petition does not thereby create the necessity for obtaining his consent. He apparently consistently stated and correctly so, that he could not consent to the adoption of a child that was not his.
In addition, there was no evidence to show that the child had been acknowledged by the true father in accordance with LSA Civil Code Article 203. For these reasons, no consent by the father to the adoption was required under LSA-R.S. 9:429. The entry of the order without this consent was therefore permissible.
The appellant next contends that the interlocutory decree is invalid because the judge did not interrogate the adoptive parents prior to rendering the decree as required under LSA-R.S. 9:429. It is admitted that neither the appellant nor the appellees were present for interrogation when the decree was entered. The trial court held that this provision is merely directory and not mandatory. Under the particular circumstances present herein we agree. The trial court had before it the consent of the natural mother to the adoption and she was not present to be interrogated. Consequently, the only parties who could have been questioned were the adoptive parents. The report of the Welfare Department furnished all the information concerning the adoptive parents which the trial court felt necessary. Consequently, calling them for what could be no more than a pro forma interrogation would be vain and useless. Under these circumstances we hold that the interrogation was not sacramental and the failure to conduct such does not render the interlocutory decree a nullity. c. f. In re Bourque, 245 So.2d 525 (La.App.1971).
It is contended that the interlocutory decree is invalid because the Department of Welfare did not take sufficient steps to comply with LSA-R.S. 9:427 which provides that
"... If the child has not been legally surrendered or declared abandoned by a court of competent jurisdiction, the department shall make every effort to locate the living parent of the child to determine his attitude toward the proposed adoption."
The record reveals that between the time service of the petition for adoption was made on the Department and the interlocutory hearing was held, the appellant lived in several different places including Oklahoma, Alexandria, Louisiana, and Shreveport. The Department made efforts to locate Mrs. Lange by certified mail and personal visit to her last known address in Bunkie, Louisiana, where her employer advised the worker that he too would like to know the whereabouts of Mrs. Lange as she had left without notifying him. The trial court held that sufficient efforts were expended to comply with the statute and we find the evidence supports its conclusion.
*307 Appellant next contends that the interlocutory decree is invalid because her notarial act consenting to the adoption was not filed in the record prior to the entry of the decree. The law does not set forth a specific method of obtaining consent of the natural parent to the adoption. Here the consent of Mrs. Lange comes directly from the fact that she told the Coles she wanted them to adopt the child and she signed the notarial act of consent. Consent may be inferred from the fact that she was personally served with the petition for adoption with the date of the hearing set forth therein, and she failed to appear to contest the matter. Consequently, the notarial act of consent is not necessary. However, the trial court in its reasons for judgment stated that prior to entering the decree it
"... was in possession of the favorable report of the Department of Public Welfare as well as other evidence showing the consent of Mrs. Lange to the adoption ..."
Under these circumstances the fact that the notarial consent, which was admittedly executed by Mrs. Lange and was executed prior to the interlocutory decree, was not filed in the record is of no moment.
Appellant further contends that her initial consent was not freely given since she was under tremendous stress and did not actually understand what she signed. After considering the evidence, the trial court found that the appellant understood the nature of her actions and gave her consent freely. We agree with these conclusions.
The last contention of appellant is that if the interlocutory decree is not a nullity because of the alleged statutory defects then the consent she gave was revoked prior to the hearing. The record reveals that although the appellant may have changed her mind before the hearing, neither she nor her counsel communicated the revocation to any party involved nor any officer or agency of the court concerned with the proceeding prior to the signing of the interlocutory decree. The only proof offered is that the appellees heard that the appellant might be in town at the time the hearing was to be held. This knowledge came to the appellees through rumors from others. This is certainly not sufficient to be a legally effective revocation of consent. In fact, the evidence cast serious doubt as to whether Mrs. Lange did change her mind prior to the hearing. She was in town the week-end before the hearing and her only communication appeared to be with the alleged father of the child who did not testify. Consequently, we hold that there was no withdrawal of consent prior to entry of the interlocutory decree.
As valid consent to the adoption was given, and was not revoked prior to the signing of the interlocutory decree, and the interlocutory hearing was valid, the appellant can only contest the final decree on the basis of the unfitness of the adoptive parents or by showing that the welfare of the child would be adversely affected. The court found that no evidence was produced to prove either of these points, and we agree.
For the reasons assigned above, the judgment of the trial court is affirmed in all respects, appellant to pay all cost of the appeal.
Affirmed.