444 So.2d 1362 (1984)
In re McK Applying for Adoption.
No. 15907-CAJ.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
*1363 Smith & Hingle by Gilmer P. Hingle, Monroe, for appellant.
Richard Ducote, New Orleans, for appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
HALL, Judge.
The Department of Health and Human Resources filed a petition seeking to revoke an interlocutory decree of adoption rendered by the court almost two years previously. It was alleged that the proposed adoption is not in the best interest of the child because (1) the proposed adoptive parents have had a history of marital difficulty; (2) the adoptive mother abuses alcohol, has been arrested and convicted of several offenses, and is awaiting a hearing on revocation of a three-year probation; and (3) the adoptive father has serious medical problems, is unemployed, and the family has severe financial difficulties making them incapable of caring for the child.
After a hearing, in written reasons for judgment, the district court, sitting as a juvenile court, found that the adoptive parents encountered financial difficulties in late 1982, their trailer home was repossessed by creditors, and they moved in with the adoptive father's parents. The adoptive father has suffered from Parkinson's disease since 1978, was required to cease his employment in September 1982, and has been disabled since that date. In February 1983 the adoptive mother's supervised probation was revoked and she was ordered to serve a sentence of three years at hard labor.
*1364 The court held that the basic consideration in determining whether the interlocutory decree should be revoked is the best interest of the child. The present situation of the adoptive parents does not serve the best interests of the child. The court stated that it would not grant an interlocutory decree to the adoptive parents under present circumstances and considered these facts "good cause" to revoke the earlier decree.
The court ordered the interlocutory decree to be revoked and set aside, and ordered the child removed from the adoptive parents and placed in the custody of the Department of Health and Human Resources. From a judgment rendered accordingly, the adoptive parents appealed. Finding no error of law or abuse of discretion, we affirm the judgment of the juvenile court.
On appeal, the appellants specify that the juvenile court erred in revoking the interlocutory decree because the adoptive parents had met all the statutory requirements for adoption of the child, and because, under the facts presented, it is in the child's best interest to remain with the only parents she has known rather than to be uprooted. It is argued that the court did not give proper weight to the interlocutory decree which had the effect of declaring appellants qualified to be adoptive parents, that most of the difficulties encountered by these adoptive parents existed and were known to the court at the time the interlocutory decree was rendered, and no significant change of circumstances was shown. Appellants argue that the adoptive father's medical condition has been stabilized and the financial situation has improved in that he is now receiving approximately $2,000 per month disability income. Appellants further argue that the interlocutory decree can be revoked only upon a finding that the adoptive parents are unfit, which was not established. They submit that, although they are not perfect, they are the best and only parents the child has ever known, and that the child has led a stable life, well cared for and well loved.
On the other hand, the Department points to the repeated law violations by the adoptive mother over a period of years, resulting in her present incarceration, the adoptive father's disability, and their financial straits. The Department notes that under LSA-R.S. 9:431 the interlocutory decree would have become null and void on May 20, 1983 (the same date the judgment in this cause was signed) because of appellants' failure to file a petition for a final decree of adoption within two years of the granting of the interlocutory decree. Revocation of the interlocutory decree was sought to insure that the lapse of that decree would not leave the child in legal limbo, and to allow the child to be placed in a new adoptive home as soon as possible.
Factual Background
By virtue of arrangements made through appellants' attorney, the baby girl, born out of wedlock, was surrendered to appellants for adoption by notarial act executed by the natural mother when the child was nine days old. Appellants petitioned for an interlocutory decree of adoption, which was granted after investigation by the Department and after a hearing. The interlocutory decree, dated May 19, 1981, granted "temporary custody" of the child to appellants and ordered that the adoptive mother continue attending weekly group therapy and treatment sessions at the Mental Health and Substance Abuse Clinic.
The adoptive mother had a drinking problem, obviously known to the court, at the time the interlocutory decree was rendered. The record discloses that prior to the interlocutory decree the adoptive mother was convicted of DWI on three occasions between October 1976 and September 1977. There were four other moving violations in 1975 and 1976. In January 1978 she was adjudged an habitual offender and her driver's license was suspended for five years. In March 1980 she pled guilty to driving after being adjudged an habitual offender, and was sentenced to three years at hard labor. The sentence was suspended and she was placed on three years supervised probation, conditions of probation being that she attend a substance abuse program, refrain from any alcoholic consumption, *1365 refrain from driving, and refrain from frequenting places where alcohol is dispensed.
After the interlocutory decree was rendered, between June 30, 1981 and March 29, 1982, the adoptive mother was convicted on nine separate occasions for issuing worthless checks, mostly small checks payable to grocery and department stores. In September 1982 she pled guilty to driving while under license revocation. In February 1983 her probation was revoked and at the time of trial the adoptive mother was in jail serving the three-year sentence. The mother was attending a substance abuse program and taking Antabuse up until the time she was incarcerated.
The adoptive father, an offshore driller, has suffered from Parkinson's disease since 1978. The disease prevented him from working, contributing to the financial difficulties the family encountered, which included filing a Chapter 13 bankruptcy. He was required to stop working entirely in September 1982, and is permanently disabled. Disability payments from his former employer of about $2,000 per month did not commence until the early part of 1983. Their trailer home was repossessed and the family, which includes the adoptive father's teenage son by a previous marriage, moved in with the father's parents who live in a rural area. The adoptive father's disease has been stabilized by medication. He is able to speak with difficulty, can drive, and can attend to the care of the child. Care of the child, however, seems to be primarily in the hands of the grandmother.
There is no evidence that the child has been neglected or abused. There is evidence that she is a bright, normal, healthy three-year-old, mature for her age.
Applicable Law
LSA-R.S. 9:421, et seq. governs the adoption of persons under seventeen. Adoption is a privilege which exists only where expressly granted by statute and is subject to statutory restrictions and exceptions. Hargrave v. Gaspard, 419 So.2d 918 (La.1982). Adoption is a creature of statute, is only what the law makes it, and the relationship must be established strictly in accordance with the statutory requirements. Adoption of children in this state is under court supervision and authorization. Roy v. Speer, 249 La. 1034, 192 So.2d 554 (1966); In re Amorello, 229 La. 304, 85 So.2d 883 (1956); Green v. Paul, 212 La. 337, 31 So.2d 819 (1947); Woods v. Collins, 274 So.2d 466 (La.App. 1st Cir.1973).
LSA-R.S. 9:422.8 provides that "the formal act of voluntary surrender grants the legal custody of the child identified in the act to the person or persons named or represented in the act." Accordingly, appellants were vested with "legal custody" of the child from the time the natural mother executed the act of surrender. Nevertheless, the state retains the superior right in the matter of adoption, involving as it does the best interest and welfare of the surrendered child. Roy v. Speer, supra.
The statutory scheme provides for the filing of a petition for adoption, service and notice to interested parties, investigation by the Department, a hearing, the granting of an interlocutory decree, subsequent visitation and investigation by the Department, another hearing, and a final decree of adoption.
LSA-R.S. 9:431 provides that "At any time before the entry of the final decree of adoption the court for good cause ... may revoke its interlocutory decree either on its own motion or on the motion of the department or on motion of the petitioner or any person interested in the child." This section also provides that "If no petition for a final decree is filed within two years after the granting of an interlocutory decree the latter shall become null and void unless good cause is shown why an extension should be granted."
The interlocutory decree does not ipso facto lapse or become null and void if no petition for a final decree is filed within two years. In Woods v. Collins, supra, a natural mother filed a petition for a writ of habeas corpus to gain custody of her child from adoptive parents who had been *1366 awarded an interlocutory decree of adoption six years previously but had not filed a petition for a final decree. The court found good cause for the delay, rejected the natural mother's petition, and granted a six-month extension for filing the petition for a final decree, thereby recognizing the continued viability and effectiveness of the interlocutory decree six years after it was originally granted.
LSA-R.S. 9:433 provides that "Upon refusal to grant an interlocutory or final decree to prospective adoptive parents, other than to a stepparent, for the reason that the adoption is not in the best interests of the child, the court may remove the child from the petitioner and reinstate the legal custodian or appoint a custodian." This provision should also apply upon revocation of an interlocutory decree in the best interest of the child. Accordingly, it was within the discretion of the court in this case to appoint the Department as custodian of the child.
LSA-R.S. 9:422.11 provides that "Should an interlocutory decree have been entered without opposition, the child shall not be removed from the custody of the prospective adoptive parents nor the final decree of adoption denied unless there is an unfavorable recommendation by the department or the prospective adoptive parents are found to be unfit." In re Bourque, 245 So.2d 525 (La.App. 3d Cir.1971), decided prior to the enactment of Section 422.11, held that an interlocutory decree of adoption may be revoked "if the evidence establishes that the adoptive parents are unfit, or that it would be to the best interests of the child that such a decree be revoked." To the same effect is Lange v. Cole, 289 So.2d 304 (La.App. 1st Cir.1973); Woods v. Collins, supra; and In Re Adoption of Giambrone, 262 So.2d 566 (La.App. 4th Cir.1972). The enactment of Section 422.11, quoted above, seems to require, after an interlocutory decree has been granted and before the decree can be revoked and the child removed from the adoptive parents, more than a weighing of best interests as between competing claimants to custody of the child, that is, an affirmative showing that conditions in the prospective adoptive home are not suitable or that the adoptive parents are not fit. A stronger showing of unsuitability or unfitness is required to justify the exercise of a court's discretion to revoke an interlocutory decree than is required to justify the exercise of a court's discretion to initially deny an interlocutory decree of adoption.
The court "may grant or refuse to grant an interlocutory decree", LSA-R.S. 9:429, "may revoke its interlocutory decree", LSA-R.S. 9:431, and "may enter a final decree of adoption; or it may deny the adoption", LSA-R.S. 9:432 B. Granting an interlocutory decree, revoking such a decree, or granting a final decree is left to the sound discretion of the juvenile court judge. Consequently, the standard of review on appeal is whether or not an abuse of discretion occurred.
The "basic consideration" for a final decree and all other decrees in the course of the adoption procedure "shall be the best interest of the child." LSA-R.S. 9:432 B.
LSA-R.S. 9:427, specifying the findings which shall be included in the report of the Department to the court, offers some statutory guidance as to the factors to be considered in determining the best interests of the child. These enumerated factors are (1) the conditions with respect to the availability of the child for adoption; (2) the physical and mental condition of the child and other factors regarding the suitability of the child for adoption in petitioner's home; (3) the moral and financial fitness of the petitioner; (4) the conditions of the proposed adoptive home with respect to health; and (5) the adjustment, and other advantages or disadvantages to the child.
Summarizing, an interlocutory decree may be revoked, in the sound discretion of the juvenile court, for good cause and if there is an unfavorable recommendation by the department or the prospective adoptive parents are found to be unfit. The basic consideration shall be the best interest of the child. Fitness of the prospective adoptive parents and the best interest *1367 of the child are to be evaluated according to enumerated statutory criteria and other relevant factors.
The Merits
The essence of the trial court's decision is that the proposed adoptive parents are unfit or unsuitable and that the child's best interest will be served by revoking the interlocutory decree and making the child available for adoption by more suitable parents. The facts and circumstances of this case justify that decision, and there was no abuse of the juvenile court's discretion.
The interlocutory decree recognized the adoptive mother's drinking problem by ordering her to continue to attend the substance abuse clinic. Although the evidence is scant as to her drinking habits after that time, she testified that she continued to drink on occasion. More importantly, however, there has been a continuous pattern of law violations by the adoptive mother over a period of years, both before and after the interlocutory decree was rendered, resulting in her present incarceration for a three-year term. The moral implication is obvious, as is the fact that the adoptive mother is and will be for some time unavailable to care for the child, both factors operating to the disadvantage of the child and weighing in favor of revocation of the interlocutory decree.
The condition of the home with respect to health is a statutory criterion. The adoptive father's unfortunate disabling disease, while not of his own making, is another disadvantage of the proposed adoptive home.
Although the adoptive parents went through a period during which they demonstrated financial unfitness, they appear to be financially able at this time to provide a suitable home because of the adoptive father's disability pay of approximately $2,000 per month.
Advantages of the adoptive home to the child are the apparent close relationship she has with the only parents she has known, and the difficulty of adjustment if she were to be removed from the home and placed in another.
On balance, the facts and circumstances demonstrate "good cause" for revocation of the interlocutory decree, LSA-R.S. 9:431, an unfavorable recommendation by the Department and unfitness of the prospective adoptive parents, LSA-R.S. 9:422.11, and that the revocation of the interlocutory decree is in the best interest of the child, LSA-R.S. 9:432 B.
For the reasons assigned, the judgment of the district court, sitting as a juvenile court, is affirmed, at appellants' costs.
Affirmed.