469 So.2d 1065 (1985)
In re M.M.L. Applying for Adoption.
No. 16932-CAJ.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
Kennedy, Goodman, & Donovan by Robert J. Donovan, Jr., Shreveport, for appellant.
Rivers, Beck & Lee by Larry W. Rivers, Alexandria, for appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
*1066 HALL, Judge.
This is an appeal from the denial of a stepparent adoption. Although the juvenile court found that the consent of the child's legal father to the adoption by the stepfather was not necessary because of the father's failure to support the child, the court further found that the minor child's best interest would not be served by granting the adoption. In a case presenting a close question on the propriety of refusing an adoption, we affirm the judgment of the juvenile court.
The child, adopted during infancy, was approximately four and one-half years old at the time his adoptive parents divorced in 1976. At the time of the divorce the father was ordered to pay child support of $100.00 per month. In November 1976, the mother married MML. The father, who was in the Air Force at the time of the divorce, went overseas and did not return until 1978. He was discharged from the Air Force at the end of 1980. During this period of time, the father complied with his support obligation of $100.00 per month. During the same period, he visited with his son in 1977 prior to going overseas, and kept the boy for about a month in 1978 after returning from overseas. However, the father had no further direct contact with his son until he kept the boy, at the request of the mother and stepfather, for 5½ months beginning in June 1982 and ending in November 1982. During those months, father and son apparently got along well, and the boy did well in school. Nevertheless, since returning the boy to the mother and stepfather in November 1982, the father has not seen his son. It was the mother's position after the child was returned that the father should not be allowed to see his son, particularly because of his failure to provide support payments. During this period, there were negotiations between the parents, both of whom were represented by counsel, concerning child support and visitation. In November 1983, the stepfather petitioned to adopt the child.
The juvenile court noted the father's record on child support since his discharge from the service has been "abysmal". The court found that the father was 16½ months behind on his support payments in January 1983 when he paid $300.00, the equivalent of three months of payments, and that the father then paid nothing more for nine months until the adoption petition was filed. The juvenile court also found that the father's lack of support should not be excused by the fact that the father was sporadically employed since leaving the service. The father had jobs and quit at least once, had funds from his National Guard training, and was assured of income by his new wife's employment. Their combined income was over $12,000.00 in 1981, over $16,000.00 in 1982, and over $27,000.00 in 1983.
On the other hand, the juvenile court found that the mother did not come to the adoption proceedings with completely clean hands. The court was satisfied that some of the father's efforts at contacting the son were frustrated by the mother. Furthermore, in January 1983, the mother filed criminal neglect charges against the father which dated from September 1982 through January 26, 1983. However, the mother failed to inform the enforcement authorities that during September, October, and part of November 1982, the boy was staying with the father, who was supporting him during that visit.
While the court found the stepfather well qualified to be an adoptive parent, the court also found that when the son had an opportunity to be with his father, a "pretty good relationship" existed, and thus "a further glimmer of hope" existed that the father would assume his responsibility. The court noted that adoption statutes, being in derogation of a parent's natural right, must be most strictly construed, and found that the son's interest would best be served by maintaining the parental relation.

NECESSITY FOR FATHER'S CONSENTFAILURE TO SUPPORT
The conditions under which the consent of a child's legitimate parent to an adoption by a stepparent or grandparent becomes *1067 unnecessary are addressed by LSA-R.S. 9:422.1 which provides:
If the spouse of the petitioner is the legitimate parent of the child or if the petitioner is the grandparent or grandparents of the child, then the consent of the other legitimate parent is not necessary when the spouse of the petitioner, or the grandparent or grandparents, or the mother or the father has been granted custody of the child by a court of competent jurisdiction, and if any one of the following conditions exist:
(1) The other legitimate parent, whether or not a resident of this state, has failed to support the child for a period of one year after judgment awarding custody to the mother or father or grandparent or grandparents. The provisions of this Paragraph shall not apply if, after consideration of the issue of child support, there is a judicial decision, settlement, or judgment resulting in no child support being due or owed during the time period involved.
(2) The other legitimate parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
In the instant case, the juvenile court held that the father's consent was not necessary because of his failure to support the child. As previously noted, the court found the father substantially complied with his $100.00 per month support obligation through 1980, but was 16½ months behind in January 1983. The trial court arrived at the 16½ months total by considering the following facts. In 1981, the father was given credit for $200.00 in payments out of the $1,200.00 he owed for the entire year. Thus, he was in arrears for $1,000.00 (10 months) in 1981. In 1982, the father was given credit for the 5½ months the child stayed with the father and was supported by the father. Since the father's support obligation was $100.00 per month, the trial court apparently multiplied the $100.00 per month by 5½, and arrived at a credit of $550.00. This $550.00, in combination with a single payment of $100.00 during 1982, made the father's total credit $650.00 for 1982, and made his total arrearages $550.00 (5½ months) for that year. Finally, in 1983 the father owed for the month of January prior to the time of his $300.00 payment. Adding the 10 months from 1981, the 5½ months from 1982, and the one month from 1983 gives the total of 16½ months noted by the juvenile court. The father then made a $300.00 payment in January 1983 that accounted for 25% of his yearly obligation, but made no further payments during the next nine months prior to the filing of the adoption petition. After the petition was filed in November 1983, the father kept current on his 1984 payments up until the time of trial, but did not pay off or decrease his arrearages.
The juvenile court indicated its awareness of the Louisiana Supreme Court's holding in Haynes v. Mangum, 375 So.2d 103 (La.1979) that a significant contribution of support in the year prior to the adoption proceeding may satisfy the support requirement of LSA-R.S. 9:422.1. In Haynes, in the year prior to the filing of an adoption petition by the stepfather, the father made a single payment constituting 25% of his yearly obligation and 42% of his arrearage. However, in the present case, after considering the amount of support and the amount of arrearages, the court found the father's performance neither significant nor substantial.
While there is no question that the father's record on support leaves much to be desired, a closer question is whether his support was so inadequate as to deprive him of the right to consent to his son's adoption. The father substantially complied with his child support obligation from 1976, the year of the divorce, through the end of 1980, the year he left the Air Force. During the first half of 1981, he was unemployed most of the time. He had not yet met the woman who would become his new wife, and thus did not benefit from her income at that time. In 1982, while he was living with his future wife, he kept his son for 5½ months. This visit was initiated at the request of his former wife and her new *1068 husband. While the trial court only gave the father $550.00 credit for this time, it is quite doubtful that the expenses attributable to the minor son during this period were that low. A fairer way of computing credit in that situation would have been to estimate the actual expenses for the time period. If this had been done, the father may well have been found to owe no arrearages for 1982. In the twelve-month period preceding the petition for adoption, the father made one payment equal to 25% of his yearly obligation. That period also included between one and two weeks of the 5½ month visit previously mentioned. Thus, the total per cent of the father's twelve month obligation for which he should be credited was in excess of 25%, and was not far removed from the 25% found to qualify as a "significant support payment" in Haynes, supra. Of course, in Haynes, the total number of months in arrears was not as great as in this case.
Where the father substantially complied with his support obligation for several years following the divorce, where his inability to obtain employment after leaving the service was a significant factor in the longest period during which payments were not made, where there was no period of twelve months or more in which no payment at all was made, and where a question exists as to whether a significant contribution was made in the year prior to filing of the adoption petition, the necessity of the father's consent is an arguable issue. However, because we affirm the juvenile court's finding that adoption in this case is not in the child's best interest, the question of the adequacy of the father's support need not be further considered except as it is indicative of the best interest of the child.

THE BEST INTEREST OF THE CHILD
The major standard to which a court must look in determining whether to grant an adoption is the best interest of the child. In re: DWH, 457 So.2d 137 (La.App. 2d Cir.1984). Because each adoption case presents a unique set of facts, and because numerous factual considerations must be taken into account by a juvenile court judge when determining where a child's best interest lies, the judge necessarily must be vested with great discretion. This court will ordinarily not try to second-guess a juvenile court judge who is in the better position to make the best interest determination. In re: Hinton, 390 So.2d 972 (La. App. 2d Cir.1980); In re: DWH, supra. In the present case, the juvenile court determined the child's best interest would be served by not severing the bond between parent and child. The court's written reasons for judgment reflect a careful weighing of considerations in a case where the best interest determination was close and difficult. The court's considerations included the amount of contact between father and son over the past several years, the nature of the relationship between father and son, the relationship between the boy and his stepfather, the amount and frequency of the father's support payments, and the relationship between the mother and stepfather, and the father and his wife.
While not complying with his financial support obligation, the father has maintained a relationship with his son. The son lived with the father for almost half a year within a year prior to the filing of the adoption petition. The stepfather conceded that the father loves the child.
Stability in the child's present home and a further bonding of his relationship with his stepfather who has assumed the parental responsibilities weigh in favor of the adoption. Weighing in favor of the juvenile court's rejection of the adoption is the advantage of maintaining and encouraging the natural relationship between the child and his father, with the child having at the same time a continuing good relationship with his stepfather. The juvenile court soundly exercised its discretion in choosing the latter course as being in the best interest of the child.
Recognizing the great discretion of the juvenile court, and the great reluctance with which courts sever the important bond between parent and child, we find no abuse *1069 of the juvenile court's discretion in denying the adoption.
Judgment is affirmed at appellant's cost.
AFFIRMED.