556 So.2d 236 (1990)
In re JGG, Applying for Adoption, Plaintiff-Appellee,
v.
JLF, Defendant-Appellant.
No. 21119-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Linda Bradley Norwood, West Monroe, for JLF, appellant.
Barnes, Jefferson & Robertson by Stephen A. Jefferson, Monroe, for JGG, appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
SEXTON, Judge.
This civil appeal was brought by defendant-appellant, JLF, arguing that the district court abused its discretion in granting the permanent adoption of SDF (presently age 5) to plaintiff, JGG, the husband of the child's biological mother. The names of the parties involved have been omitted in the title and in this opinion in accordance with LSA-R.S. 9:437. We affirm.
Petitioner's wife, MTFG (defendant's ex-wife), and defendant were divorced on September 2, 1986. At the time of the divorce, *237 the joint custody of the child was granted to the parties and defendant was ordered to pay his ex-wife $100 per month for the support and maintenance of the child.
After petitioner and the child's mother were married, a dispute arose between defendant and his ex-wife regarding child support and visitation. Defendant had, since the couple's separation, paid only one month of the court-ordered child support. MTFG advised her ex-husband that unless he began to pay the child support, he would be permitted to see the child only at the home of the child's maternal grandmother.
Apparently, defendant found this unacceptable because he did not take advantage of visitation with the child again for over one year and not until after the adoption proceedings were initiated below.
Petitioner filed the proceeding below on April 14, 1988, seeking the adoption of SDF and alleging that the consent of the defendant was not required based upon his failure or refusal to pay court-ordered child support for a period in excess of one year. Petitioner's wife, the child's biological mother, concurred in his petition. Defendant filed an answer to the petition, essentially denying the allegations contained therein but further asserting the love he has for his daughter and that his efforts to visit with the child had been frustrated and curtailed by his ex-wife and the petitioner.
Following a home study, an adversarial proceeding, and a psychological evaluation of the child's biological parents, the district court ruled in favor of the petitioner ordering the adoption in a lengthy and well-considered written opinion. It is from this judgment that defendant appeals.
Defendant makes four arguments in support of reversal, all of which present the issue of whether the adoption was in the best interest of the child.
The basic consideration for a final decree and all other decrees in the course of the adoption procedure shall be the "best interest of the child." LSA-R.S. 9:432 B; In re McK, 444 So.2d 1362 (La. App. 2d Cir. 1984), In re MML, 469 So.2d 1065 (La.App. 2d Cir.1985). Even though one has lost his right to oppose a proposed adoption by virtue of his failure to support or visit or communicate with his child, the court must still find that it is in the best interest of a child before an adoption may be granted. In re Latiolais, 384 So.2d 377 (La.1980); In re JSB, 505 So.2d 796 (La. App. 2d Cir.1987), writ denied, 508 So.2d 819 (La.1987).
A "best interest" evaluation is, by its very nature, a factual or ad hoc analysis. Thus, each case must turn on the particular circumstances underlying the child's relationship with both the petitioner/stepparent and the non-custodial natural parent. In re Glass, 424 So.2d 383 (La.App. 2d Cir. 1982); In re BAS, 424 So.2d 405 (La. App. 2d Cir. 1982).
The legal consequences of adoption are abrupt, severe, and irrevocable: the relationship between the child and the natural parent is severed. LSA-C.C. Art. 214; In re Glass, supra. Louisiana courts have historically articulated a pronounced reluctance to sever the parent/child relationship and derrogate from the natural rights inherent therein. In re Glass, supra; In re H, 437 So.2d 895 (La.App. 2d Cir.1983). Accordingly, adoption statutes are to be strictly construed. In re MAY, 441 So.2d 500 (La.App. 2d Cir.1983), set aside and remanded, 449 So.2d 1028 (La. 1984), original opinion reinstated, 452 So.2d 800 (La. App. 2d Cir.1984), writ denied, 458 So.2d 475 (La.1984); In re McK, supra.
It is not enough to examine the love and home environment provided by the petitioner/stepparent. It is necessary as well to examine the depth and closeness of the child's ties with the non-custodial natural parent, and the effect which the loss of this relationship would have on the child. In re Glass, supra; In re May, supra; In re JSB, supra. The seriousness and finality of the severing of the relationship between the parent and the child is a factor to be considered, as well as the importance and benefit to the child of a continued relationship with the parent. In re Glass, supra.
As noted previously, the district court provided a lengthy and well considered opinion in support of his decision. Rather *238 than attempting to summarize that opinion, we reproduce, in large part, the substance of the opinion here.[*]
"To begin with, the evidence and the confidential report to the Court show that the Plaintiff has a very close relationship with the child, that the child has lived in his home for the majority of the child's young life and there is absolutely no impediment to granting the Plaintiff's application for adoption....
"... In trying to discern the true motivations of the litigants and particularly, Defendant, [JLF], this Court ordered [JLF] and [MTFG] to submit to psychological evaluations. The Court already had the benefit of the usual adoption report, which, incidentally, was not read by the Court until after the close of evidence in order to avoid even undetected prejudice in the Court's mind as the evidence and testimony was heard. Even though [JGG] was the actual Plaintiff applying for adoption, this Court felt that the psychological evaluations of [MTFG] and [JLF] would better illuminate the real motivations and intentions of the parties. This Court has now received a detailed report from Dr. Bobby L. Stephenson, Psychologist.... Dr. Stephenson's report was most helpful to the Court. His findings substantiated some impressions given the Court by the evidence.
"Overall the evidence convinced the Court that the prior marriage of [JLF] and [MTFG] was, if not stormy, at least not tranquil. The evidence also showed that even after their separation and divorce there was continuing hostility and perhaps jealousy on the part of [JLF]. At least at times, the child may have been used by the parties as a weapon to psychologically attack one another. [JLF] had refused to pay support even though he was financially able to do so. He admitted this in testimony. He indicated that he did not think [MTFG] needed the support. The amount of support, only $100.00 per month, was certainly not an extravagant amount. There was testimony, not uncommon in such cases, that the motivation for [JLF] not making the child support payments was because he did not want to help Mr. and Mrs. [G]. There was even testimony that he withheld this support after being warned that to do so would result in the forfeiture of his parental right to object to adoption. The ascribing of this ulterior motivation to [JLF] is supported by the fact that he has tendered all back due support at trial and after the adoption proceedings were instituted. Payment of support after the commencement of adoption proceedings does not defeat the application; In Re MDA Applying for Adoption, 427 So.2d 1334 (La.App. 2d Cir.1983). The fact that [JLF]'s motivation in objecting to the adoption is rooted in jealousy or anger more than a desire for a true relationship with his child is also supported by the testimony of [MTFG], as corroborated by the calendar she kept through 1986, that at times [JLF] would call only to speak with her and to discuss his own personal matters rather than to inquire about their child.
"But these possibly mere impressions formed by the Court from the evidence and testimony have been corroborated and substantiated by the report of Dr. Stephenson. In that portion of the report directed strictly to the Court concerning his evaluation of [JLF]'s motivation and personality, Dr. Stephenson said:
"The results on [JLF] indicates (sic) that he tends to form very strong dependent relationships with females and as a result becomes quite angry and resentful when he feels frustrated which is on a regular basis. He is likely to react to this feeling of frustration with violence and agressiveness ... individuals with his pattern have a personality disorder which includes antisocial features. They have problems making commitments and conforming their behavior to expectations. They are frequently involved in conflict with others. Test data suggest that there is likely to be a pattern of continuing discord with [MTFG] with their being periods of little contact and *239 then periods of aggressiveness and discord. His actions appears (sic) to be particularly antagonistic toward [MTFG]. There does not appear to be a strong sense of attachment to [SDF] as individuals with this pattern have considerable difficulty making these commitments." (Emphasis supplied by the [Trial] Court).
"Therefore, this Court is forced to conclude that the true motivation of [JLF] in this matter is not necessarily to establish and/or maintain a close relationship with the child, [SDF]. This conclusion is further buttressed by the fact that up until the filing of this adoption proceeding in April 1988, [JLF] had not seen [SDF] since November 2, 1986. After the filing of the adoption matter, [JLF] then filed a proceeding to enforce his rights of visitation with [SDF]. This Court, which perchance happened to hear [JLF]'s rule for visitation privileges, granted him specific visitation rights until such time as this adoption matter could be heard and decided. [JLF] testified that he had wanted to continue seeing [SDF]. [MTFG] had told him that he could not see [SDF] except at the home of [MTFG]'s mother at least not until he paid his child support obligation. [JLF] could not satisfactorily explain to this Court why he did not then either pay his child support obligation, file an action in court to enforce his child visitation rights, or even see [SDF] under the conditions imposed by [MTFG]. Once again the Court must conclude that a father who was deeply interested in seeing his child would have done something at that time to ensure his visitation rights.
"Dr. Stephenson's conclusions concerning aggressive and violent reaction to frustration on the part of [JLF] is also corroborated by the testimony of [MTFG] and her mother concerning violent reactions of [JLF], both during his marriage to [MTFG] and subsequently. Even though some of [JLF]'s reaction can be explained by the hurt and anguish he must have felt over what apparently was [MTFG]'s unfaithfulness to him during their marriage, it is also apparent from the evidence and Dr. Stephenson's findings that such hostile feelings will remain. This Court must conclude that it cannot be in the best interest of [SDF] to continually expose her to such a hostile environment.
. . . .
"The appellate court in In re: Adoption of J.S. Bee, [sic] supra, in denying an adoption in that case, said that the child is entitled to the best of both worlds, meaning the love and affection of both stepparent and actual parent. Of course, this would be true if children lived in a vacuum or if all parents possessed the qualities of the mother in Solomon's celebrated case. In this case, however, it seems in the best interest of [SDF] that she be insulated as much as possible from any further litigation and turmoil by allowing her adoption by [JGG] to proceed. Consequently, this Court would grant a final decree of adoption, declaring the child to be the child of the Plaintiff."
Whether an adoption is in the best interest of the child must be decided on the facts of each case and the trial judge is vested with great discretion in making that determination. In re BAS, supra; In re MML, supra; In re JSB, supra. This discretion is not absolute and the trial judge's determination of best interest is subject to reversal if the record reveals manifest error. In re JSB, supra. However, this court will not ordinarily try to second guess a district or juvenile court judge who is in the better position to make the best interest determination. In re MML, supra. Specifically, where a factual finding by the district court is based on a reasonable evaluation of credibility by the trial judge, it may not be disturbed on appeal. In re BAS, supra.
Our review of the instant record discloses adequate basis for the trial judge's conclusions, his factual findings, and judgments. The evidence indicates that JGG has been functioning as a father for SDF since before he and MTFG were married. Not only did JLF fail or refuse to make all but one support payment, he took no steps in furtherance of seeing his child when MTFG placed restrictions on visitation *240 as a result of his nonsupport. Whatever father-child relationship may have existed between JLF and SDF ceased to exist long before the adoption proceeding was initiated below. Our brethren of another circuit affirmed the granting of an adoption under facts very similar to those presented here. See Adoption of Dore, 469 So.2d 491 (La.App. 3d Cir.1985).
For the above and foregoing reasons, the judgment of the district court granting JGG's petition to adopt SDF is hereby affirmed.
AFFIRMED.
NOTES
[*] For purpose of readability and maintaining the confidentiality of all involved, we have made minor editorial changes to the text, which should be apparent from the text itself.