|,JAMES L. CANNELLA, Judge.
The wife/mother, CMJ, and husband/step-father, BJJ, appeal from the trial court ruling dismissing their Petition for Intra-Family Adoption of the minor child, BVG. For the reasons which follow, we affirm.
CMJ was married to DKG on June 6, 1998. On January 15,1999, BVG was born into the marriage. The parties were granted a divorce on March 22, 2000. In an Interim Judgment dated February 11, 2000, CMJ and DKG were awarded, joint custody and DKG was ordered to pay child support to CMJ in the amount of $50 per week. Meanwhile, CMJ met her current husband, BJJ, in 2000, when BVG was only 16 months old. CMJ and BJJ were married on September 20, 2003. BJJ provides 100% of the financial support for BVG and acts as her father in all ways, such as, doing homework, reading to her at bedtime, playing games, taking her to the doctor.
On January 14, 2004, CMJ and BJJ filed a Petition for Intra-Family Adoption by BJJ of BVG, with the consent of her mother CMJ. The petition[1] alleged that DKG paid no child support to CMJ for BVG from June 15, 2003 to the filing of the petition on January 14, 2004. It also alleged that he did not contact the child since August 11, 2002. The petition asserted that the adoption was in the best interest of the child.
| oFollowing a hearing on May 17, 2004, the juvenile court judge took the matter under advisement. Judgment was thereafter rendered on June 16, 2004 dismissing the Petition for Intra-Family Adoption.[1] In her reasons for judgment, the juvenile judge agreed with the assertions by CMJ and BJJ, which DKG admitted, that DKG had not paid child support for over a six month period, making his consent to the adoption unnecessary. However, the juvenile court went on to find that the adoption was not in the best interest of the child. It is from this judgment that CMJ and BJJ appeal.
On appeal, CMJ and BJJ argue that the juvenile court committed manifest error and abused it discretion in dismissing the petition for intra-family adoption because the evidence clearly and convincingly establishes. that the adoption is in the best interest of the minor child, BVG.
The Louisiana Children’s Code designates the types of adoptions authorized and includes intra-family adoption. La. Ch.C. art. 1170. The term intra-family adoption refers to certain adoptions by a stepparent, step-grandparent or relative of the child. La. Ch.C. art. 1243. La. Ch.C. art. 1193 specifies whose consent, to the adoption is necessary and includes, as applicable to this case, the father of the child if the child is legitimate. However, La. Ch.C. art. 1245 provides that a father’s consent may be dispensed with in certain circumstances including, when the father refuses or fails to comply with a court order of support without just cause for a period of at least six months or when the father refuses or fails to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months. Also, even if the father’s consent is dispensed with, the trial court must ultimately determine whether the adoption is in the best interest of the child.
*108 |4In this case, the trial court found that DVG, by his own admission, failed to pay the court ordered support for over a six month period, and his consent to the adoption was not necessary. However, the trial court also held that the termination of BVG’s natural father’s rights, as well as those of his family members, affected by the adoption of the child by her stepfather, was not in the child’s best interest. Thus, the trial court rendered judgment dismissing the petition for adoption.
The determination of whether an adoption is in the best interest of the child must be decided on the facts of each case and the trial judge is vested with great discretion in making that determination. In re Hinton, 390 So.2d 972 (La.App. 2nd Cir.1980). Upon review, a determination concerning what is in the best interest of a child is subject to reversal upon a finding that the determination is manifestly erroneous. Adoption of Latiolais, 384 So.2d 377 (La.1980). A reviewing court may not, however, merely decide if it would have found the facts of the case differently. The reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly' erroneous. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.
This case is very difficult. ' On the one hand, the evidence clearly indicates that BJJ has been a loving and commendable father-figure to BVG. He cares for her financially, physically and emotionally and any child would be fortunate to have him for a father. In contrast, BVG’s natural father has not supported her financially and has not been a physical presence in her life. On the other hand, the record also indicates that DKG and his family members made attempts to contact BVG through CMJ. She did not answer the telephone when.they called and, although they left messages, the calls were never returned. DKG testified that he did not attempt to go back to court because he had financial problems. Although DKG wrongfully stopped making support payments, he testified that he did so ^because he was being prevented from visiting BVG. The evidence most supportive of the trial court’s decision came from the testimony of the family members of DKG, particularly his mother and grandmother. His mother testified concerning the warm and loving family that they had and their desire to include BVG in it. She testified that she attempted to contact CMJ on numerous occasions to arrange visits with BVG and the calls were never answered or returned. She even tried calling CMJ’s mother to intercede, all to no avail. She also testified that she sent cards with checks enclosed for the child’s birthday and other occasions and that the checks were not cashed and there was never any response. She testified that she considered CMJ’s older child from a previous marriage among her grandchildren and also sent checks for gifts for her. The record supports the trial court’s finding that this was a loving family who tried to include BVG in their lives, but whose efforts were thwarted.
We encourage the family of and DKG to continue to reach out financially and personally to BVG, like they have been doing. We also encourage BJJ to continue to provide financial and personal support to BVG. In this way BVG will receive the best of both worlds, support from two families, which she needs and deserves. Based on the whole record, we simply cannot conclude that the trial court was manifestly erroneous in the decision that the adoption was not in the best interest of the child.[2]
*109 Accordingly, for the reasons stated above, we affirm the judgment of the trial court dismissing the petition for intra-fam-ily adoption and the other orders of the court. Costs of appeal are assessed to CMJ and B JJ.

AFFIRMED.

. The judgment also set child support at $50 per week and payment toward arrearages of $100 per month. It ordered joint custody, designating CMJ as the primary domiciliary custodial parent. Weekly, holiday and summer visitation was specified. These matters were not appealed except insofar as it is argued that the juvenile court erred in not granting the adoption.

. We caution DKG, however, that this may well be his last opportunity to show his ability *109 and willingness to be a father to BVG. Given the proper legal circumstances, CMJ and BJJ could again petition the court for adoption of BVG and might well have their case viewed differently. However, we also caution CMJ that any attempts to sabotage DKG’s efforts will likewise be viewed negatively.