972 So.2d 479 (2007)
In re V.A.H.
No. 07-CA-472.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2007.
Rehearing Denied January 28, 2008.
*480 Margaret E. Woodward, Attorney at Law, New Orleans, LA, for Defendant/Appellant.
Edith H. Morris, Bernadette R. Lee, Suzanne Ecuyer Bayle, Attorneys at Law, New Orleans, LA, Betsy Fischer, Attorney at Law, Metairie, LA, for Plaintiff/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
This is an appeal by the biological father of V.A.H. from a stepfather adoption granted by the juvenile court based on a petition for intra-family adoption filed by the child's biological mother and her present husband. For reasons that follow, we affirm.
The record shows that V.A.H. was born in November, 2001 in Alabama to S.H. (mother) and C.H. (father). The couple were divorced on April 25, 2003. At the time of the Alabama divorce, the couple agreed to joint custody of V.A.H. with the mother as the custodial parent. The agreement also provided for visitation rights of the father, and child support and medical expenses to be paid by the father.
In October of 2004, the father was convicted on charges of child pornography and incarcerated in federal prison. About one year later on October 26, 2005, the Alabama court rendered an "Order of Modification" in which the mother was awarded sole and exclusive custody and control of V.A.H. Further, all visitation and secondary placement rights of the child's father were terminated with that order.
The "Order of Modification" resulted from an ongoing Alabama criminal investigation into whether C.H. molested V.A.H. in August or September, 2004 before his federal incarceration. At the time of the 2007 hearing in Jefferson Parish Juvenile Court, the molestation case was still pending before the Alabama Grand Jury.
In May of 2005 before the father's rights were terminated, the Alabama court granted grandparent visitation to V.A.H.'s parental grandparents. That order also provided that the grandparents pay child support in the amount of $238.00 per month, to be credited to the child support obligation of the child's father.
The mother testified that the Alabama sexual molestation charge came after the child returned from a visit with her father in 2004 before he went to prison. When the child gave her mother and her doctor information that suggested she had been sexually abused by the father on a visit, all visits between the child and her father and paternal grandparents were suspended. Visits between the child and the grandparents resumed in May of 2005, by the court order after the father's incarceration.
The father did not comment on the criminal charges for sexual molestation of the child except to say that the grand jury proceedings were set and there should be a resolution on that issue soon.
*481 After the father's incarceration in 2004, the child and her mother relocated to Louisiana. Both the judgment of divorce and the modification order were made executory in Jefferson Parish, Louisiana on September 12, 2006. The child's mother married S.M. (stepfather) on April 5, 2006, and the petition for intra-family adoption at issue herein was filed on December 12, 2006.
At the hearing on the petition, the mother testified that the child's father had had no contact with his daughter for two years and seven months before the hearing, which took place in March of 2007. She testified that during the period between her separation from C.H. in September of 2003, and his incarceration in October, 2004, C.H. was sporadic, inconsistent, lack-adaisical and complacent in his visitation. He cancelled or rescheduled visits when his parents were out of town, or when he had no friend to accompany him. He was late picking the child up and dropping her off and negligent in his care for V.A.H., such as taking her to a water park immediately after she had tubes implanted in her ears.
On his last Father's Day visit in 2004, the father overslept and forgot to pick up his daughter for a promised breakfast outing. This caused V.A.H. to become very upset and begin to cry. The father cancelled his holiday visitation at the last moment, causing the mother, who had arranged to work since her daughter would be with the other parent, to have to make arrangements with her parents while she worked. When the father overslept on Mother's Day and did not return V.A.H. for a planned event with the mother's family, his mother handled the matter, returning the child hours late and unbathed.
The mother testified that during the period between his incarceration in October, 2005 and the "Order of Modification" which was signed about one year later in October, 2005, the father did not communicate with the child. There was no court order to prevent him from contacting the child by way of letter or card during that period.
C.H. was released from federal prison about four months before the March, 2007 adoption hearing. During this period he did not petition the court for visitation. He has had no contact with his daughter for two years and seven months before the hearing.
The mother further testified that she received no child support from the time the father was incarcerated in October, 2004 until the Alabama court issued an order in May, 2005 granting the paternal grandparents visitation rights and ordering them to pay child support of $238.00 per month. The paternal grandparents eventually paid the back due child support, rendering it current.
The mother assumed that it was the grandparents' funds that were used to pay this obligation. However, the paternal grandmother, R.H., testified that the father had made financial arrangements to meet his child support obligation before he was incarcerated. She testified that she and her husband withheld the funds because they were not permitted to see their granddaughter until the Alabama court granted them visitation after the father's incarceration. Although R.H. testified that she and her husband used the father's funds to pay the child support, there is no documentation in the record to corroborate that testimony.
The mother testified that the father still owed $868.58 in medical bills at the time of the hearing. She testified that she notified the father of the amount still due in April, 2006, but had not received payment. *482 The father acknowledged that he received the bills, but has not paid them.
After the May, 2005 Alabama order instituting grandparent visitation, the child began to see her paternal grandparents again. The child's mother and stepfather testified that these visits are detrimental to the child and that she is in counseling as a result. The mother testified that the child is often upset after visits with her grandparents. The stepfather testified that upon returning from grandparent visitation, the child has told him that it is his fault that her Daddy is in jail and that her Daddy is in jail because her Mommy put him there. He also testified that the child comes home upset because her grandparents tell her she can't see her Daddy because her Mommy won't let her, and that she can live with them if she wants to do so.
According to the mother's testimony she and the child have been living with the stepfather since August of 2005. Both the mother and the stepfather are gainfully employed and are financially capable of providing for the child. Further, they have subsequently married and are living as a family unit. In her testimony, the mother described the relationship between her husband and daughter as that of father and child. They enjoy going to movies, playgrounds and other activities, including a favorite of grocery shopping together.
The stepfather explained that he has a good father-daughter relationship with the child and they do many activities together such as going to the park, McDonald's play land and the grocery store. He stated that they play games together and she calls him "Daddy".
Documents to support the testimony of the mother and the stepfather were introduced in conjunction with the testimony. Those documents include the divorce judgment and the order of modification in which the visitation and secondary placement rights, although not the parental rights, of the father were terminated. Contrary to the father's testimony, nothing in the order prohibits him from sending a card or contacting his daughter by phone.
Two letters from the mother which include copies of medical bills corroborate her testimony that the father knew about the expenses and the exact amounts due.
The father opposed the adoption and testified at the hearing. He stated that he was aware of his support obligations and made arrangements through his parents before his incarceration in October of 2004 to have them met. He also acknowledged that he has received, but not yet paid, some outstanding medical bills for which he is responsible.
The father testified that he has not had any contact with his daughter since September of 2004. He testified that he was incarcerated for child pornography, caused by his voluntary acts. He also admitted that he has not called, sent birthday or Christmas cards, or written any notes to his daughter since September of 2004. He asserted the reason for that lack of contact was his understanding that he was prohibited from doing so by the Alabama court order, although, the order introduced into the record does not prohibit such contact.
The father admitted that he did not always use good judgment on visitations with his daughter. He acknowledged that all of the testimony given by the mother regarding his visitation was correct.
In conclusion, his testimony was that:
I'm unhappy to admit that they're true, but ah, the great thing about being human in, um, we get to make mistakes. You know, we don't have to, um, we all make mistakes. It's a part of human nature. All I'm asking for is a second *483 chance. I know I can be the father that I'm supposed to be. I just need the chance.
After hearing all of the testimony, the juvenile court granted the adoption by the stepfather in a judgment with reasons. In that judgment the court found that the consent of the natural father was not required and that the adoption was in the best interest of the child.
This court has set forth the law with regard to our review of a decision regarding intra-family adoption in In re B.V.G., 04-969 (La.App. 5 Cir. 12/14/04), 893 So.2d 106, writ denied XXXX-XXXX (La.1/26/05), 893 So.2d 56. In that case we stated:
The determination of whether an adoption is in the best interest of the child must be decided on the facts of each case and the trial judge is vested with great discretion in making that determination. Upon review, a determination concerning what is in the best interest of a child is subject to reversal upon a finding that the determination is manifestly erroneous. A reviewing court may not, however, merely decide if it would have found the facts of the case differently. The reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous.
(citations omitted)
In re B.V.G., 893 So.2d at 108
In the matter before us, the father does not contest the facts that he has not had contact with the child since 2004, that he was incarcerated for child pornography, has a pending criminal charge against him alleging sexual molestation of the child, or that he has made mistakes in judgment as a parent. Further, it is clear from the testimony that no child support was paid from October of 2004 through May of 2005, and that medical bills for which the father is responsible are still outstanding. The father simply asks for a second chance.
In brief to this court, the father argues the juvenile court was manifestly erroneous in its finding that he was without just cause for his failure to communicate during his incarceration. The father asserts the court order limiting his contact with the child constitutes just cause.
The loss of a parent's right to a child is of the utmost gravity to this court. Therefore, we have carefully reviewed the record in this matter. However, we cannot find under the facts of this case that the juvenile court committed manifest error.
As a general rule a biological father's consent is required for the adoption of a child. La.Ch.C. art. 1193. However, La. Ch.C. art. 1245 provides that under some circumstances such consent may not be required. Article 1245 reads as follows:
The consent of the parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B or C of this Article.
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
The burden is on the party petitioning the court for adoption to prove the father's consent is not required under the law. In re Intra Family Adoption of A.G.T., 06-805 (La.App. 5 Cir. 3/13/07), 956 *484 So.2d 641, writ denied, 07-0783 (La.5/4/07), 956 So.2d 611.
Here it was shown that the father failed to support the child for over six months, and has failed to pay medical expenses as ordered by the Alabama court. He also admits he has had no contact with the child since his incarceration in 2004. Although he had completed his sentence and was released by the time of the hearing, he admitted he has made no attempt to contact the child. We are not persuaded by the father's argument that he was prohibited from making such contact by court order. It is not clear which order the father is using as his justification. However, the Alabama order of modification contained in the record terminates "all visitation or secondary placement rights of the Plaintiff (father) with the said minor child." The order did not prohibit phone calls, letters or birthday cards.
Incarceration alone is insufficient to justify a failure to communicate with a child. In re Fleming, 817 So.2d 371 (La. App. 5 Cir.2002). Here, the father did not attempt to communicate with the child during his incarceration or in the months following his release. We find, therefore, that the trial court was correct in its finding that the two prongs of the applicable codal article were met. The father herein has failed to pay court ordered child support for a period of six months and has failed to communicate with the child for six months without just cause. Accordingly, we find the trial court correctly found that the father in this matter has lost his right of consent to this adoption.
However, even upon finding that a parent has lost his right to consent to the adoption, the adoption should only be granted when it is also found to be in the best interest of the child. In re Intra Family Adoption of A.G.T., supra.
In the matter before us, where the mother has been awarded sole custody of the child and is married to the stepfather petitioner, La.Ch.C. art. 1255 B[1] creates a rebuttable presumption that the adoption is in the child's best interests. Article 1255 effectively imposes the burden on the natural parent opposing the adoption to show that the adoption is not in the child's best interest. In re C.B., 94-0755 (La.10/17/94), 643 So.2d 1251, 1253.
In the matter before us, we find the juvenile court correctly found that the father has not successfully rebutted the presumption that the adoption is in the best interest of the child. The father admits he has no contact with the child in over three years and does not have a relationship with her. His history of child pornography and the allegation of sexual abuse, although not yet adjudicated, do not convince this court that the juvenile court was manifestly erroneous in its finding that the adoption is in the best interest of the child.
We commend the father for his honest and candid admission of his failures as a parent. However, those actions bring about consequences. While we are mindful of the harsh consequences of losing a child, we cannot find manifest error in the trial court's decision.
The stepfather has been the only father the child has known since she was three-years-old and the two have bonded as parent and child. The stepfather has emphasized in his testimony that he is willing and able to meet the child's financial and emotional needs. He has been *485 doing that for the last three years and has testified that he will continue to do so.
Although we acknowledge the heart wrenching loss the father must feel as a result of this decision, we are convinced the adoption is in the best interest of the child and find no error in the decision of the juvenile court. Accordingly, we affirm that ruling.
AFFIRMED.
NOTES
[1] When a court has granted custody to either the child's grandparents or his parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child.